907 F.2d 150
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kenneth E. FRICK, Plaintiff-Appellant,
v.
UNITED STATES of America; Philip H. Wolak, individually and
in his capacity as Acting Chief, Farmer Programs, Farmers
Home Administration; Clyde B. Blaszak, individually and in
his capacity as County Supervisor, Farmers Home
Administration, Defendants-Appellees.
 No. 89-1854.
 United States Court of Appeals, Sixth Circuit.
 June 28, 1990.
 
 Before KRUPANSKY and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Kenneth E. Frick, appeals the district court's order granting the motion of defendants-appellees, The United States, Clyde Blaszak, the Ottawa County supervisor of the Farmers Home Administration (FmHA), and Philip Wolak, acting chief of farmer programs of the FmHA, to dismiss plaintiff's complaint for money damages for alleged violations of federal statutes, regulations and plaintiff's constitutional rights. For the following reasons, we affirm.
 
 I.
 
 2
 In 1985 plaintiff applied for and was granted five loans totaling $158,959.39 under the Consolidated Farm and Rural Development Act (CFRDA), 7 U.S.C. Sec. 1921 et. seq. (1982), administered by the Farmers Home Administration (FmHA). These loans were secured by real estate mortgages and by security agreements covering equipment and livestock, plaintiff's chattel property.
 
 
 3
 On January 15, 1986, defendant Blaszak, the Ottawa County supervisor of the FmHA, first met with plaintiff when plaintiff advised FmHA that he was considering filing bankruptcy. Plaintiff was advised to submit a 1986 farm and home plan to determine what options were available. On February 28, 1986, plaintiff discussed with FmHA personnel the Dairy Termination Program implemented by the Department of Agriculture to reduce milk surpluses by paying dairy producers to leave the dairy industry. The program required a milk producer to submit a bid for which he would discontinue his milking operation. Plaintiff submitted a $53.00 bid per hundred weight. The Secretary of Agriculture was to select the lowest bid prices sufficient to reduce the surplus of milk.
 
 
 4
 On March 19, 1986, plaintiff Frick was arrested, charged with first degree murder, and put in the Ottawa County jail without bond pending trial. As a result, plaintiff was unable to maintain the livestock that secured the FmHA debts. Defendant Blaszak decided that it would be in the best interest of plaintiff and the United States to arrange to have plaintiff's cows milked and fed until it was determined whether or not plaintiff's bid had been accepted by the Dairy Termination Program. The announcement was to be made on April 30, 1986.
 
 
 5
 On March 20, 1986, defendant Blaszak attended plaintiff's arraignment and was allowed to meet with him to discuss the milking and feeding arrangements for the FmHA collateral. Plaintiff told Blaszak that his brother and son would take care of the livestock through the morning of March 21, 1986. Blaszak called the FmHA acting chief of farmer programs, defendant Wolak, who advised Mr. Blaszak to try to keep the cows on the farm until the results of the Dairy Termination Program were known as that was a prerequisite for acceptance in the program. Wolak suggested that Blaszak try to persuade plaintiff to allow the FmHA to liquidate the livestock if he were not accepted by the program. On March 21, 1986, Blaszak went to plaintiff's farm and arranged to have plaintiff's neighbor and brother feed and milk the livestock through the next week. He noted that feed inventories were low.
 
 
 6
 On March 29, 1986, defendant Blaszak was advised that the maximum acceptable bid price for acceptance into the Dairy Termination Program was $22.00 per hundred weight. Because it was evident that plaintiff's bid was too high for acceptance into the program, Blaszak proposed a voluntary liquidation of the chattel security.
 
 
 7
 On April 3, 1986, Blaszak met with plaintiff at the Ottawa County jail to discuss the voluntary liquidation of the chattels. Plaintiff agreed to relinquish the livestock to FmHA. He contends that he signed an agreement which Blaszak had brought to the jail on the condition that he be granted a loan from the FmHA to replace what was liquidated. Plaintiff did not agree to relinquish the equipment as he thought that he would be able to continue farming later in the year. Mr. Blaszak's main concern was the livestock, a perishable asset, as feed supplies were running low, so he agreed to delete the machinery from the voluntary liquidation agreement.
 
 
 8
 Mr. Blaszak then visited Mrs. Frick, plaintiff's wife, on April 3. She told him that her son did not want continued responsibility for feeding and milking the cows as he was 15 years old and needed to attend school. She signed the agreement to liquidate the livestock that plaintiff had signed earlier that day and requested that FmHA schedule the auction and hire the auctioneer.
 
 
 9
 FmHA hired an auctioneer who stated that the sale would attract better prices and more bidders if it were to include the machinery as well as the livestock. On April 4, 1986, defendant Blaszak again went to the jail to discuss what the auctioneer had said with plaintiff. Plaintiff stated that if the auctioneer agreed to clean up the farm and make the equipment saleable, plaintiff would agree to the sale of the equipment as well. He then signed a second Agreement for Voluntary Liquidation of Chattel Security [hereinafter "the agreement"] including both the machinery and livestock. On April 6, 1986, Mrs. Frick also signed the agreement to liquidate. The auctioneer agreed to pay plaintiff's son and a neighbor to continue to milk and feed the livestock until the time of the sale. The auctioneer agreed to pay for the feed for the livestock as the supply was nearly depleted and take the cost out of the sale proceeds.
 
 
 10
 On April 2, 1986, FmHA received notice that a prior lienholder on plaintiff's real estate, of which FmHA was not aware, had initiated foreclosure proceedings on a portion of plaintiff's real estate. FmHA records indicated that no prior liens existed on the real estate.[1]
 
 
 11
 On April 26, 1986, an auction sale of plaintiff's livestock and equipment was conducted pursuant to the liquidation agreement, and the net proceeds of $37,382.02 from the auction sale were applied to plaintiff's FmHA loans. On June 23, 1986, plaintiff endorsed the check which had been made out jointly to plaintiff and FmHA.
 
 
 12
 On April 29, 1986, the prior lienholder foreclosed its mortgage on plaintiff's real property. FmHA paid off the prior lienholder at the foreclosure sale in order to protect its junior lien position and became the owner of the property, obtaining a sheriff's deed on April 29, 1986, subject to a one-year redemption period. Plaintiff failed to exercise his redemption rights, which expired on April 29, 1987. Plaintiff's FmHA account was credited with $84,000, the value of the real estate.
 
 
 13
 Plaintiff was found not guilty by a jury in his murder trial. Plaintiff is still indebted to the FmHA in the principal amount of $45,646.81 plus interest and real estate taxes as of December 31, 1986.
 
 
 14
 On April 27, 1987, plaintiff filed a complaint against the United States of America, Philip Wolak, individually and in his capacity as the FmHA acting chief of farmer programs, and Clyde B. Blaszak, individually and in his capacity as the FmHA county supervisor, seeking money damages from the individual defendants and the government for alleged violations of federal statutes, regulations, and plaintiff's constitutional rights; breach of contract; and negligence in the performance of a voluntary undertaking to render services.
 
 
 15
 The defendants moved to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) or for summary judgment under Fed.R.Civ.P. 56(a) on May 16, 1989. A brief in opposition to defendants' motion was filed July 3, 1989. By Opinion and Order filed July 19, 1989, the defendants' motion to dismiss or for summary judgment was granted and the complaint was dismissed. A timely notice of appeal was filed by plaintiff.
 
 II.
 
 16
 Plaintiff maintains that he has a private right of action under 7 U.S.C. Sec. 1989. Plaintiff alleges that defendants failed to comply with the federal regulations promulgated under the CFDRA by failure to provide management assistance, supervision, and credit counselling in the use of borrowed funds, failure to assist in planning farm operations and financial management practices, failure to defer or extend loan payments as required by the regulations, and failure to properly deal with plaintiff as a delinquent or problem case. Plaintiff alleges that he has a private right of action for these violations under 7 U.S.C. Sec. 1989, the statute empowering the Secretary of Agriculture to promulgate the regulations at issue.
 
 
 17
 Under the test developed by the Supreme Court in Cort v. Ash, 422 U.S. 66 (1975), we find that Congress did not intend the statute to be enforced by private actions. This court has stated, "Review of the statute and its legislative history discloses no congressional intent to permit a private right of action for violations of FmHA's regulations." Kenny v. Block, No. 88-1961, slip op. at ----, (6th Cir. Aug. 28, 1989) (per curiam). Section 1989 is a general enabling statute, empowering the Secretary of Agriculture to establish regulations to implement CFRDA. The intent of Congress was to delegate authority to the Secretary of Agriculture to promulgate regulations in order to give farmers financial assistance through discretionary loan servicing and supervision, not to create a private right of action. Thus under the Cort v. Ash test, 422 U.S. at 78, although plaintiff is a member of the class for whose special benefit the statute was enacted, there is no explicit or implicit legislative intent to create a private right of action and implying a private right is not consistent with the underlying legislative scheme. Finally, a federal private right of action is inappropriate as improper loan servicing is essentially a claim of negligence, a cause of action which has traditionally been left to the states. Because an agency's rulemaking power cannot exceed the authority granted to it in the enabling statute passed by Congress, the agency rules that plaintiff contends were violated provide no independent private right of action. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 947 (3rd Cir.), cert. denied, 474 U.S. 935 (1985). For these reasons, we affirm the opinion of the district court that plaintiff does not have a private right of action for the alleged violations of the regulations at issue.
 
 III.
 
 18
 Plaintiff next contends that under FmHA regulations defendants were under a duty to provide proper loan servicing to him and that defendants negligently failed in the performance of that duty. Plaintiff contends that under the Federal Torts Claims Act (FTCA), 28 U.S.C. Secs. 2671-80, the United States will accept liability for common law torts committed by its agents to the same extent and in the same manner as liability would attach to a private individual under state law. Plaintiff contends that in the present case the alleged violations of agency regulations constitute a common law tort actionable under the FTCA. Neal v. Bergland, 646 F.2d 1178 (6th Cir.1981). Plaintiff also relies on Schindler v. United States, 661 F.2d 552 (6th Cir.1981), in which this court stated that a cause of action against the United States under the FTCA existed if defendant's violation of a federal regulation or statute would be considered negligence per se under state law. Id. at 560-61.
 
 
 19
 Even if plaintiff were able to state a cause of action for negligence against the United States for violation of the regulations enacted under the CFRDA, plaintiff's tort claim against the United States is barred under the Federal Torts Claims Act because of plaintiff's failure to exhaust administrative remedies as required by 28 U.S.C. Sec. 2401(b).[2] As a general rule, an administrative claim must be filed as a prerequisite to commencing a civil action under the FTCA. Garrett v. United States, 640 F.2d 24, 26 (6th Cir.1981) (per curiam). This prerequisite is jurisdictional and not capable of waiver or subject to estoppel. Id.; Executive Jet Aviation, Inc. v. United States, 507 F.2d 508, 515 (6th Cir.1974). In Williamson v. United States Dep't of Agric., 815 F.2d 368 (5th Cir.1987), a farmer in bankruptcy sued FmHA officials and the Department of Agriculture for committing a series of allegedly negligent and intentional actions in violation of FmHA regulations, which allegedly forced the farmer into bankruptcy. The court held that the farmer's claims against the United States under the FTCA would be "barred for ... failure to exhaust his administrative remedies before asserting his claims in federal court." Id. at 378. Similarly, in the present case, no administrative claim has been received by the United States Department of Agriculture. Thus, even if plaintiff's allegations rise to the level of a common law tort, an issue which we need not decide, this claim is barred by his failure to pursue an administrative remedy. Therefore, the FTCA claim against the United States was properly dismissed by the district court for lack of jurisdiction.
 
 IV.
 
 20
 Plaintiff also alleges that agency officials Blaszak and Wolak committed common law torts in their individual capacities.
 
 
 21
 Federal officials sued in their individual capacities have absolute immunity from common law tort suits provided they acted within the "outer perimeter of [their] line of duty" and the act "was an appropriate exercise of the discretion which an officer of that rank must possess if the public service is to function effectively...." Barr v. Matteo, 360 U.S. 564, 575 (1959). The fifth circuit in Williamson stated that the challenged acts of the FmHA officials, which involved the administration of FmHA loans, were actions unmistakenly committed to the discretion of the Secretary by 7 U.S.C. Sec. 1989 and were committed within the scope of the officials' authority. 815 F.2d at 375, 380. We find that in the present case the alleged tortious actions of the FmHA officials are likewise appropriate exercises of discretion within the scope of their authority. For this reason, defendants Blaszak and Wolak in their individual capacities have absolute immunity from the alleged common law torts. The district court is affirmed on this issue.
 
 V.
 
 22
 Plaintiff finally alleges that he is the victim of constitutional as well as common law tortious activities by the FmHA. In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court recognized that victims of a constitutional violation by a federal agent have an implied right of action to recover damages against the official absent any statute conferring such a right. In the present case, this implied right of action only applies against defendants Blaszak and Wolak in their individual capacities. The United States and its officers in pursuit of their official duties remain protected from a Bivens claim by the doctrine of sovereign immunity. Nuclear Transport and Storage, Inc. v. United States, 890 F.2d 1348, 1352 (6th Cir.1989), cert. denied, --- S.Ct. ---- (1990); Holloman v. Watt, 708 F.2d 1399, 1402 (9th Cir.1983), cert. denied, 466 U.S. 958 (1984); Boda v. United States, 698 F.2d 1174, 1176 (11th Cir.1983); Garcia v. United States, 666 F.2d 960, 966 (5th Cir.), cert. denied, 459 U.S. 832 (1982); Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 104 n. 9 (2d Cir.1981).
 
 
 23
 Plaintiff argues that defendants Blaszak and Wolak committed a constitutional tort by coercing him into signing an agreement whereby all his livestock and equipment were sold, which was a taking of property without due process of law in violation of the Fifth Amendment. Plaintiff relies on Arcoren v. Peters, 811 F.2d 392 (8th Cir.1987). However, this decision was vacated by an en banc panel of the eighth circuit. Arcoren v. Peters, 829 F.2d 671 (8th Cir.1987), cert. denied, 485 U.S. 987 (1988).
 
 
 24
 Plaintiff also contends that the FmHA officials' allegedly coercive tactics denied him the benefit accorded farmers under 7 U.S.C. Sec. 1981a, the "moratorium" amendment to the Consolidated Farm and Rural Development Act, which reads as follows:
 
 
 25
 In addition to any other authority that the Secretary may have to defer principal and interest and forego foreclosure, the Secretary may permit, at the request of the borrower, the deferral of principal and interest on any outstanding loan made, insured, or held by the Secretary under this title, or under the provisions of any other law administered by the Farmers Home Administration, and may forego foreclosure of any such loan, for such period as the Secretary deems necessary upon a showing by the borrower that due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of such principal and interest when due without unduly impairing the standard of living of the borrower.
 
 
 26
 7 U.S.C. Sec. 1981a (emphasis added). Plaintiff alleges that the statute creates an entitlement to the benefit of deferral of principal and interest on outstanding FmHA loans and the foregoing of foreclosure on FmHA loans if the borrower is temporarily unable to continue making payments. Perry v. Sindermann, 408 U.S. 593 (1972); Board of Regents v. Roth, 408 U.S. 564 (1972).
 
 
 27
 Plaintiff's reliance on 7 U.S.C. Sec. 1981a to establish a property right which he was denied is misplaced. This is not a case where plaintiff's request for deferral on loan payments or foregoing of foreclosure was denied. When faced with the prospect of losing his livestock because he was in jail, because feed supplies were running low, and because his family was unwilling to continue to feed and milk the cows, plaintiff voluntarily agreed to allow FmHA to liquidate these perishable assets in order to recover some value for them. Plaintiff agreed to include the equipment in the liquidation in order to get the best overall price. Although plaintiff alleges that he was coerced into signing the agreement, he proposed no alternative to liquidation and allowed Blaszak to make arrangements for the care of the livestock and purchase of feed supplies until the time of the sale.
 
 
 28
 This court has held that there is no due process right of formal notification to the borrower that deferral relief is available under 7 U.S.C. Sec. 1981a. Ramey v. Block, 738 F.2d 756, 762 (6th Cir.1984). Therefore, plaintiff cannot contend that he was denied the benefits allegedly accorded by 7 U.S.C. Sec. 1981a because he was not notified of them. Moreover, plaintiff waived any right he may have under 7 U.S.C. Sec. 1981a concerning deferral of foreclosure proceedings, because he voluntarily agreed to a liquidation which, in the exigent circumstances of this case, was in his interest. The liquidation of livestock and equipment was not initiated because plaintiff failed to make payments on his FmHA loans, but because the livestock, which secured the loans, were in danger of perishing. Plaintiff was incarcerated with no chance of bail and his family was not interested in the continued care of the livestock. In April of 1986, plaintiff voluntarily executed two different agreements to liquidate his collateral and voluntarily endorsed the check to the FmHA in June, almost three months after he was allegedly "coerced" into signing the agreement.
 
 
 29
 The foreclosure on plaintiff's real property is not implicated by 21 U.S.C. Sec. 1981a because the foreclosure was initiated by a third party, a prior lienholder, not by FmHA officials.[3] For these reasons, plaintiff fails to state a constitutionally protected property right under 21 U.S.C. Sec. 1981a which has been denied. Because no entitlement under 7 U.S.C. Sec. 1981a has been denied, plaintiff fails to make out a colorable Bivens claim under the Fifth Amendment against defendants Blaszak and Wolak in their individual capacities and the claim was properly dismissed. Even if plaintiff could make out a colorable Bivens claim, defendants would be protected by the doctrine of qualified immunity because they did not violate a "clearly established" law or "clearly established right," the contours of which were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 107 S.Ct. 3034, 3038-39 (1987).
 
 
 30
 For the reasons stated above, the decision of the district court is affirmed.
 
 
 
 [1]
 An attorney had prepared a Final Title Opinion that indicated that FmHA had a first lien position. Upon receiving notice that plaintiff was being foreclosed by a prior lienholder, Blaszak requested a new Title Opinion. The attorney issued a new Title Opinion and admitted his prior error. (Appendix p. 33). Plaintiff's contention that defendants were responsible for the mistake of the attorney is without merit
 
 
 [2]
 28 U.S.C. Sec. 2401(b) states:
 A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within 2 years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.
 
 
 [3]
 Plaintiff also alleges that defendants were under an injunction issued in Rutan v. Block, No. G83-19 CA (W.D.Mich. Nov. 29, 1983), which prohibited foreclosures on plaintiff's real property and chattels or demanding voluntary conveyance. The record does not show that this injunction applied to a class of which plaintiff was a member. However, even if an injunction were in effect, we do not believe that in the circumstances of this case it was violated