Andrew **GREEN** and Janice Green, Plaintiffs,

v.

**UNITED STATES** of America, through its Department of Agriculture and Farm Services Agency, Donald Hare, individually, Lou Anne Kling, individually, Mike Hinton, individually, Louise Partridge, individually, Jerry Rosenquist, individually, and Debra Spike, individually, Defendants.

No. 2:97–CV–180.

United States District Court, W.D. Michigan, Northern Division.

Feb. 27, 1998.

Ingrid M. Andrews, Traverse City, MI, Jo Anne Mickley, Jo Anne Mickley Law Offices, Grand Ledge, MI, for Andrew J. Green, Janice M. Green.

W. Francesca Ferguson, Asst. U.S. Attorney, Michael H. Dettmer, United States Attorney, Grand Rapids, MI, for United States of America, Department of Agriculture and Farm Services Agency.

W. Francesca Ferguson, Asst. U.S. Attorney, Grand Rapids, MI, for Donald Hare, Lou Anne Kling, Mike Hinton, Louise Partridge, Jerry Rosenquist, Debra Spike.

## *OPINION*

QUIST, District Judge.

Plaintiffs Andrew Green and Janice Green ("Greens") filed this action against the United States of America and several individual employees of the Farm Services Agency ("FSA") after Defendants used limited loan funds allocated to the State of Michigan to fund another applicant's loan prior to funding the Greens' loan. In their ten-count complaint, the Greens allege various tort claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, claims for deprivation of their rights under the Fed-

eral Constitution, a claim for review of the FSA's actions under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701–706, and a claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Now before the Court is Defendants' motion to dismiss, or alternatively, for summary judgment.

### Facts

On February 22, 1994, the Greens submitted their application on Form FmHA 410–1 to FSA for a direct farm ownership loan in the amount of $121,200 to finance the purchase of a farm from Charles Wallis ("Wallis"). The Greens' completed loan application was filed on March 14, 1994, and was approved by Jerry Rosenquist ("Rosenquist"), the Chippewa County Supervisor for Michigan FSA, on April 20, 1994. On the date of approval, the Greens signed Form FmHA 1940–1, captioned "Request for Obligation of Funds," which stated that their loan application was approved and that the loan was approved "subject to the availability of funds and other conditions required by the Farmers Home Administration." (Defs.' Mem. Supp. Mot. Ex. 2.)

Initially, the FSA informed the Greens that the loan might be funded through inclusion in a "pool" in the spring or summer of 1994, but the loan was not funded as indicated. Subsequently, Rosenquist advised the Greens and Wallis that there were no funds available to fund the Greens' loan in the 1994 fiscal year but assured them that they were first on the funding list and that their loan would be funded at the beginning of the next fiscal year. Based upon these representations, Wallis permitted the Greens to move onto the farm in July of 1994, prior to closing, and the Greens made substantial repairs and improvements to the farm in order to prepare it for cattle.

On November 9, 1994, Rosenquist informed the Greens and Wallis by letter that Michigan had received $95,000 in farmer program loan funds, one-half of its total allocation for fiscal year 1995 of $190,000, but indicated that the balance of the funds would not be provided until after January 1, 1995.

However, on November 17, 1994, the Michigan FSA used the 1995 funding allocation to fund a loan in the amount of $198,000 to another borrower, Philip Morawski, whose application had been received by the FSA prior to the Greens' application, on March 22, 1993. The decision to fund the Morawski loan was made by Lou Anne Kling ("Kling"), Acting Deputy Administrator of the FSA National Office, who determined that the Michigan office was improperly funding loans based upon the order in which the application process was completed, rather than upon the order in which the application was received as required by applicable regulations.[1] Kling advised the Greens of the reasons supporting the decision to fund the Morawski loan by letter dated December 23, 1994. Kling also informed the Greens that they could not appeal the FSA's decision not to fund their loan because their request for assistance had been approved subject to availability of funds rather than denied. (Defs.' Mem. Supp. Mot. Ex. at 0055–56.)

In spite of Kling's determination, the Greens appealed both the FSA's decision not to fund their loan and Kling's determination that the Greens were not entitled to appeal the funding decision to the Department of Agriculture National Appeals Division ("NAD"). On March 14, 1995, a hearing officer issued a written decision which upheld FSA's decision to fund the Morawski loan. The Greens also appealed that decision, which was affirmed by the Acting Director for NAD on July 7, 1995.

Rosenquist assisted the Greens in obtaining alternate financing that consisted of a direct FSA loan and a FSA guaranteed loan through Farm Credit Services to meet the Greens' closing requirements. Their loan was at a higher interest rate and payable over a shorter term than the FSA loan would have been. However, because of their urgent need for the funds, the Greens decided to accept the loan package. On February 19, 1997, Debra L. Spike ("Spike"), Acting FSA State Executive Director, informed the Greens that a review of their case file indi-

---

1. The applicable regulations provide that applications will be considered and processed in the order of date received. *See* 7 C.F.R. §§ 1910.3(a), 1910.4(b); *Michigan FSA Instruction 1940–L,* (Defs.' Mem. Supp. Mot. Ex. 5 at 0017).

cated that their credit needs had been met through a combination of direct and guaranteed financing and that the FSA was not holding any loan application open.

On February 6, 1997, the Greens made a request under FOIA to FSA for a copy of direct loan funding lists from March 1994 through the date of the request. Spike responded by letter dated February 18, 1997, stating that the lists dated prior to 1997 were unavailable and enclosing the list of approved current applicants with the names of the borrowers and amounts deleted pursuant to FOIA exception. On March 14, 1997, the Greens' attorney sent a notice of appeal of the partial denial of the FOIA response and the decision to close the Greens' file to the FSA Administrator and to the NAD. The NAD responded by letter dated March 20, 1997, stating that it was only acting on the issue of the decision to close the Greens' application without notification because it did not have jurisdiction over the FOIA request appeal. It appears that the FSA Administrator never responded to the Greens' FOIA appeal and that the NAD never reviewed the decision to close the Greens' loan application file, although the filing of this lawsuit may have preempted review by the NAD.

### Standard of Review

Defendants bring the present motion as a motion to dismiss under Fed.R.Civ.P. 12(b)(6) and as a motion for summary judgment under Fed.R.Civ.P. 56. Both parties have submitted matters outside of the pleadings for consideration by the Court in resolving the motion. Therefore, the Court will treat the motion as a motion for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judg-

ment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511 (citing *Schuylkill and Dauphin Improvement Co. v. Munson*, 81 U.S.(14 Wall.) 442, 448, 20 L.Ed. 867 (1871)).

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992)(quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Discussion

The claims asserted by the Greens in their complaint essentially focus on the following conduct by Defendants: (i) the decision to fund the Morawski loan prior to the Greens' loan; (ii) the FSA's determination that the Greens could not appeal the decision to fund the Morawski loan; and (iii) the decision to close the Greens' loan application without prior notice. Defendants contend that they are entitled to dismissal of or summary judgment on the tort claims because those claims are barred under exceptions to the limited waiver of sovereign immunity set forth in 28 U.S.C. §§ 2680(a) and 2680(h) and because some or all of those claims fail to state a claim upon which relief can be granted. Defendants also contend that they are entitled

to dismissal of the Greens' constitutional claims because the individual Defendants are entitled to qualified immunity, because the individual Defendants did not violate any Constitutionally protected right, and because the individual Defendants did not act intentionally or recklessly. Finally, Defendants contend that they are entitled to summary judgment on the APA and FOIA claims.

## I. Tort claims

### A. § 2680(a)

The FTCA represents a limited waiver by the United States of its sovereign immunity, which serves as an absolute bar to suits against the government. *Rich v. United States*, 119 F.3d 447, 449–50 (6th Cir.1997), *petition for cert. filed*, (U.S. Feb. 12, 1998)(No. 97–1318). The FTCA waives the government's absolute immunity from suit

> for money damages, … for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). However, the government's immunity is preserved in certain cases. One example is the exception that preserves immunity for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). If a case falls within this statutory exception, the court lacks subject matter jurisdiction. *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir.1984). ■ The discretionary function exception was enacted "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and po-

litical policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984). The exception applies only to acts that involve the exercise of discretion—acts that "involve[ ] an element of judgment or choice," *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)—and "covers '[n]ot only agencies of government … but all employees exercising discretion,'" *Varig Airlines*, 467 U.S. at 813, 104 S.Ct. at 2764 (quoting *Dalehite v. United States*, 346 U.S. 15, 33, 73 S.Ct. 956, 966, 97 L.Ed. 1427 (1953)(alterations in original)).

■ The Supreme Court has adopted a two-part test for determining the applicability of the discretionary function exception. First, a court must find that the action involved a matter of choice for the employee. *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1958; *accord United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991)(quoting *Berkovitz*). If the employee's actions were mandated by statute, regulation, or policy prescribing a specific course of action, the exception will not apply. *Gaubert*, 499 U.S. at 322, 111 S.Ct. at 1273. Absent a prescribed act, "the employee must exercise judgment and some protection should be provided for this exercise." *Rich*, 119 F.3d at 450.

■ If the challenged conduct involves an element of judgment or choice, the second part of the test requires a court to determine whether "that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536, 108 S.Ct. at 1959. The focus is not on the employee's subjective intent, but instead upon "the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325, 111 S.Ct. at 1275. Thus, the exception applies "[w]here there is room for policy judgment and decision." *Dalehite*, 346 U.S. at 36, 73 S.Ct. at 968.

In Count I of their complaint, the Greens allege that the FSA negligently or intentionally violated certain regulations by not funding their loan. The Greens first assert that

FSA employees violated 7 C.F.R. §§ 1943.35 and 1943.36 by failing to request an advance of loan funds. (Compl. ¶ 59; Pls.' Br. Resp. at 14.) As Defendants point out, however, 7 C.F.R. § 1943.36, which according to the Greens provided authority for Rosenquist to request an advance of funds once their loan was approved, does not exist and the Court has not located another regulation addressing the issue. Section 1943.35, which does exist, prescribes the procedure that FSA employees are to follow in requesting and handling checks.[2] The Greens are correct that the regulation is mandatory, at least in some respects. For example, under § 1943.35(a), if funds are not requested at the time a loan is approved, advances in the amount needed must be requested through the field office terminal system. Furthermore, if funds are not available to fund a loan within fifteen days of approval, funds must be provided to the applicant no later than fifteen days after they become available. Nonetheless, the regulation has no application to the facts of this case. First, it does not obligate FSA employees to request an advance of funds when funds are not available, and second, to the extent that it prescribes mandatory conduct, it is undisputed that funds never became available in an amount sufficient to meet the Greens' immediate needs. Finally, to the extent that such funds were available, they were applied to the Morawski loan pursuant to proper funding procedures.

The Greens also assert in Count I that FSA employees violated 7 C.F.R. § 1943.10 by not giving the Greens the benefit of the preferences set forth under that section for prioritizing loans. (Compl. ¶ 60.) Section 1943.10(a) provides that an applicant "who (1) has a dependent family, or (2) is an owner of livestock and farm implements necessary to successfully carry on farming operations, or (3) is able to make down payments *will* be given preference over" another applicant who does not meet any of the criteria. 7 C.F.R. § 1943.10(a)(emphasis added). On its face, the regulation compels the FSA to give priority to an applicant who meets one of the criteria if a competing applicant does not meet any of the criteria. While the prescribed conduct *is* mandatory, Defendants have presented unrebutted evidence that Morawski, whose application was filed before the Greens' application, was also entitled to a preference under § 1943.10(a). (*See* Cole Decl. ¶ 14, Defs.' Mem. Supp. Mot. Ex. 4.) Thus, Defendants could not have violated this regulation even if the Greens were not accorded a preference as they allege.

The Greens' final argument under Count I is that the FSA denied them their right to appeal the decision to apply the funds to the Morawski loan. Nonetheless, the Greens appealed the decision, which was affirmed at two levels. The NAD also ruled that the Greens had the right to appeal Kling's nonappealability decision.

The regulations governing appeals from adverse FSA decisions are set forth in 7 C.F.R. §§ 1900.51–57. Under § 1900.55(a), if an applicant is adversely affected by a decision, the decision-maker is required to inform the applicant of the decision and of whether the decision is appealable. The regulation also provides that an applicant is entitled to request the Director of NAD to review a nonappealability decision by FSA. 7 C.F.R. § 1900.55(a). Examples of nonappealable decisions are set forth in § 1900.56 and include decisions that are not "adverse deci-

2. That regulation provides, in part:
§ 1943.35 **Action after loan approval.**
(a) *Requesting check.* If the County Supervisor is reasonably certain that the loan can be closed within 20 working days from the date of the check, loan funds may be requested at the time of loan approval through the field office terminal system. If funds are not requested when the loan is approved, advances in the amount needed will be requested through the field office terminal system. Loan funds must be provided to the applicant(s) within 15 days after loan approval, unless the applicant(s) agrees to a longer period. If no funds are available within 15 days of loan approval, funds will be provided to the applicant as soon as possible and within 15 days after funds become available . . . .
(1) When all loan funds can be disbursed at, or within 30 days after, loan closing of [sic] if the amount of funds that cannot be disbursed does not exceed $5,000, the total amount of the loan will be requested in a single advance.
(2) When loans [sic] funds cannot be disbursed as outlined in paragraph (a)(1) of this section, the amount needed to meet the immediate needs of the borrower will be requested through the field office terminal system.
7 C.F.R. § 1943.35.

sion[s]" as defined under 7 C.F.R. pt. 11. 7 C.F.R. § 1900.56(b). An "adverse decision" is defined as "an administrative decision ... that is adverse to a participant." 7 C.F.R. § 11.1.

The regulation requires the decision-maker to inform the applicant of whether the decision is appealable, but the determination regarding the appealability of a decision is left largely to the discretion of the decision-maker. The regulations provide virtually no guidance to the decision-maker on the factors to be considered in determining whether a decision is "adverse." Thus, the regulations leave room for judgment or choice by the decision-maker. Further, a determination that a decision is or is not "adverse" to the applicant is a matter clearly subject to policy analysis. The determination may include interpretation and application of ambiguous regulations, or, for various reasons, the decision-maker may determine that certain classes of decisions are appealable while others are not. Thus, the Greens' claim based upon the FSA's determination of non-appealability is barred under § 2680(a).

■ Count II alleges that Defendants Rosenquist, Donald Hare, the Acting State Director of FSA, and Louise Partridge, the Acting State Chief of the Farmer Programs Division, made statements to the Greens and Wallis regarding the status of the Greens' loan which formed the basis of a fiduciary relationship. The Greens contend that these three Defendants breached their fiduciary duties to the Greens by not funding their loan. The Greens have not identified any specific statute or regulation pertaining to the Defendants' conduct nor has the Court found any specific statute or regulation on point. The Court notes that Rosenquist, as County Supervisor, is given broad statutory discretion, delegated by the Secretary of Agriculture, to approve or deny loans. *See* 7 C.F.R. § 1901.2; *Williamson v. United States Dep't of Agric.*, 815 F.2d 368, 376 (5th Cir.1987). This grant of discretion would reasonably extend to the decision of whether or how to assist borrowers beyond obtaining financing. A decision by any of the individual Defendants regarding how to assist loan applicants, which may take into account the purposes and objectives of the loan program, is clearly the type of policy-based decision

that is exempt under § 2680(a). Counts V and VII, which are based upon the same conduct alleged in Count II, are within the exception for the same reasons as Count II.

■ In Count III, the Greens allege that the FSA National Office was negligent in supervising the Michigan office to apply the regulations for prioritization of loans correctly. As with Count II, the Greens have not identified a statute or regulation that mandates particular conduct by the National Office to ensure that the state offices apply regulations in a correct and uniform manner. There is no question that the decision about how to do so entails substantial discretion. Moreover, the particular action required to accomplish the most effective supervision would entail considerations such as budget constraints, effective use of manpower, and prioritization of agency objectives. Such a decision is clearly the type of planning-level decision that is protected by the discretionary function exception. *See Gaubert*, 499 U.S. at 323, 111 S.Ct. at 1274.

**B. § 2680(h)**

■ Defendants also contend that certain claims are subject to the exception to waiver of immunity set forth in § 2680(h), which covers claims arising out of certain tortious conduct, including misrepresentation. Under § 2680(h), the government is immune from "tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements." *Block v. Neal*, 460 U.S. 289, 297, 103 S.Ct. 1089, 1093, 75 L.Ed.2d 67 (1983). The exception focuses only upon the government's failure to use due care in conveying information. *Id.* at 297, 103 S.Ct. at 1094; *see also McNeil v. United States*, 897 F.Supp. 309, 312 (E.D.Tex.1995)(finding plaintiffs' negligence claim not within § 2680(h) where claim charged that FmHA breached duty to warn of faulty smoke detector rather than duty of care in conveying information). Thus, the inquiry is whether the transmission of misinformation is a necessary element of the particular claim. *Commercial Union Ins. Co. v. United States*, 928 F.2d 176, 179 (5th Cir. 1991).

■ Based upon its review of the complaint, the Court concludes that Counts II, III, V, and VI are barred entirely, and Count VII is barred in part, by the misrepresentation exception under § 2680(h). The Greens assert in each claim that the Defendants made statements to them that their loan was first on the list to be funded and that they relied upon those statements. For example, under Count II, breach of fiduciary duty, the Greens allege that Rosenquist, Hare, and Partridge told them that their loan was first on the waiting list and that they relied upon those statements. (Compl. ¶¶ 70, 72.) This misrepresentation is essential to this claim because the Greens contend that the statements and assurances gave rise to the alleged fiduciary relationship. (Pls.' Br. Resp. at 16.) The good Samaritan, and detrimental reliance claims also contain similar allegations and are thus barred. (*See* Compl. ¶¶ 87–91, 94, 97, 99, 103, 105.)

■ The negligent supervision claim is also barred, although the allegations do not specifically reference misrepresentations by the Michigan office as the basis of the claim. The basis of the claim is that the National Office failed to ensure that the Michigan office was funding loans in the correct order. Any injury that the Greens might have suffered would necessarily arise from a misrepresentation by state officials about agency funding policy. In other words, the Greens could not have suffered an injury as a result of the National Office's alleged negligent supervision without relying on a misrepresentation regarding FSA policy. Finally, the claim for intentional infliction of emotional distress is barred to the extent that misrepresentations form the basis for that claim. (*See id.* ¶ 108(a).)

**C. Negligent or Intentional Violation of Regulations**

■ In addition to being barred under the discretionary function exception, the Court also concludes that Count I fails to state a claim upon which relief can be granted. In *Lundstrum v. Lyng,* 954 F.2d 1142 (6th Cir.1991)(per curiam), the Sixth Circuit held that regulations promulgated by the Secretary of Agriculture under the Consolidated Farm and Rural Development Act ("CFRDA"), 7 U.S.C. §§ 1921–2009n, do not create a private right of action for their violation. *Id.* at 1145. At issue in *Lundstrum* were regulations governing loan servicing and counseling by FmHA officers. *Id* at 1144–45. The court applied the four-part test set forth in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to determine whether an implied right of action exists and held that "we can find no intent to create a private right of action." *Lundstrum,* 954 F.2d at 1145; *see also Frick v. United States,* 907 F.2d 150, 1990 WL 94209, at *3 (6th Cir.1990)(per curiam)(finding no explicit or implicit intent to create a private right of action for violation of regulations promulgated under CFRDA); *Kenny v. Block,* 884 F.2d 579, 1989 WL 99032, at *3 (6th Cir.1989)(per curiam)("[r]eview of the statute and its legislative history discloses no congressional intent to permit a private right of action for violations of FmHA's regulations").

The regulations at issue in this case were also promulgated under the CFRDA pursuant to § 1989, the statute empowering the Secretary to promulgate regulations to carry out the purposes of the CFRDA. The Court finds nothing in the regulations at issue that requires a conclusion different from that of *Lundstrum.* Even if an implied right of action did exist under the regulations, summary judgment would be proper on Count I because the undisputed evidence shows that the FSA employees did not violate any of the regulations cited by the Greens.

**D. Breach of Fiduciary Duty**

■ The Court also concludes that Defendants are entitled to summary judgment on the breach of fiduciary claim even if the claim was not barred by §§ 2680(a) or (h) and a fiduciary relationship existed, because the FSA employees could not have had a fiduciary duty to the Greens to provide loan funding in violation of the applicable regulations. The crux of this claim is that the FSA breached its fiduciary duty to the Greens by not providing funds which the Greens were not entitled to receive. The Greens have failed to cite any authority to support their patently questionable position.

### E. Intentional or Negligent Infliction of Emotional Distress

In Count VII the Greens assert a claim for intentional infliction of emotional distress. This claim is based upon Defendants' conduct of withholding funding of the Greens' loan after assuring the Greens that they would receive funds; violating statutory and FSA regulations in diverting funds for their loan; and depriving the Greens of their right to an appeal. (Compl. ¶¶ 108(a)–(c).) To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must establish the following elements: "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress." *Atkinson v. Farley,* 171 Mich.App. 784, 788, 431 N.W.2d 95, 97 (1988).

A defendant can be held liable for intentional infliction of emotional distress only where his conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Linebaugh v. Sheraton Mich. Corp.,* 198 Mich.App. 335, 342, 497 N.W.2d 585, 588 (1993). The Court concludes that the Greens have failed to allege conduct in this case that is atrocious, utterly intolerable, or beyond the bounds of decency. First, there is no evidence that the FSA employees intentionally misled or deceived the Greens about the status of their loan. Rosenquist and the other Michigan FSA officials erroneously believed that the Greens were first on the list to have their loan funded. As it turned out, their conclusion was based upon an improper application of FSA regulations which was properly corrected by the National Office. Second, as discussed above, the Greens have not shown that FSA officials violated any statute or regulation in processing their loan. Moreover, even if the FSA had violated a regulation, this Court would still conclude that such conduct did not amount to outrageous behavior. Finally, contrary to the Greens' assertion, the evidence shows that they were afforded all rights that they had to an appeal.

## II. Estoppel

The Greens assert in Count IV of the complaint that the FSA should be estopped from denying them loan funds on the terms originally offered. In *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), the Supreme Court observed that it has never upheld an estoppel claim against the United States, although the Court refused to adopt an absolute prohibition on estoppel claims against the Government under all circumstances. *Id.* at 419–25, 110 S.Ct. at 2469–71. The Court also observed, however, that the lower courts have accepted estoppel claims under a variety of rationales and analyses. *Id.* at 422, 110 S.Ct. at 2470. Even where the claim is recognized, a litigant asserting an estoppel against the government carries a heavy burden. *United States v. City of Menominee, Michigan,* 727 F.Supp. 1110, 1121 (W.D.Mich.1989)(citing *Reynolds v. Commissioner of Internal Revenue,* 861 F.2d 469, 474 (6th Cir.1988)). The burden is heavier when the government acts in a sovereign rather than a proprietary role "by providing grants for the purpose of realizing particular social goals." *Housing Auth. v. Bergland,* 749 F.2d 1184, 1190 (6th Cir.1984).

In addition to the traditional elements of estoppel, the Sixth Circuit and other courts have imposed the requirement that the party asserting an estoppel against the government prove affirmative misconduct by a government actor. *See, e.g., Reich v. Youghiogheny & Ohio Coal Co.,* 66 F.3d 111, 116 (6th Cir.1995)(collecting cases); *United States v. Guy,* 978 F.2d 934, 937 (6th Cir. 1992); *State Bank v. United States,* 861 F.2d 954, 961 (6th Cir.1988). Mere negligence or error is insufficient to establish affirmative misconduct. *Youghiogheny,* 66 F.3d at 116.

The Greens argue that the affirmative misconduct requirement is satisfied through the statements made by Rosenquist, Hare, and other Defendants that the Greens were first on the list to have their loan funded. At most, the statements were made based upon an erroneous application of FSA regulations, and constitute no more than mere negligence. *See State Bank,* 861 F.2d at 961 (finding that local Internal Revenue policy that contravened controlling law did not amount to affirmative misconduct). Such statements do not rise to the level of affirma-

tive misconduct required for an estoppel claim against the government.

At oral argument, the Greens also offered two other bases of affirmative misconduct, namely, a November 4, 1994, letter sent by Hare to the Honorable James Barcia regarding the Morawski loan, and statements allegedly made by Defendant Kling during the hearing on the Greens' administrative appeal representing that the Greens had no right to appeal. The Court finds that neither the letter nor Defendant Kling's statement amount to affirmative misconduct. The November 4, 1994, letter simply confirms Michigan FSA's erroneous misapplication of the FSA regulations, which constitutes no more than negligence. With regard to Kling's alleged statement, the evidence does not support the Greens' position, but even if it did, Kling's statement bears no relationship to the misrepresentations about the funding status of the Greens' loan which form the basis of the estoppel claim. Moreover, as discussed above, the regulations provide little, if any, guidance on what constitutes an adverse decision, leaving the determination to the discretion of the official responsible for administration of appeals. Thus, the Greens have presented no evidence of affirmative misconduct.

## III. Constitutional Claims

The Greens also assert that they were deprived of their Constitutional rights by Defendants Kling, Hare, Hinton, Partridge, and Rosenquist. First, the Greens assert that they were deprived of due process by Defendant Kling, who wrongfully advised them that they did not have a right to appeal the decision to fund the Morawski loan; by Defendant Hinton, who they claim gave misleading testimony to the hearing officer to the effect that the Greens were not entitled to a preference for funding under the regulations; and by Defendants Kling, Hare, Partridge, and Rosenquist, who the Greens claim should have known that the Greens were entitled to a preference. Second, the Greens claim that they were deprived of equal protection by Defendant Kling because Kling corrected the improper loan processing procedure in Michigan before taking corrective action in other states. Finally, the Greens contend that they were denied due process

when Defendant Spike closed their loan application without regulatory authorization and without giving notice to the Greens.

Defendants argue that they are entitled to qualified immunity. In *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Supreme Court held that federal officials performing discretionary functions are protected by qualified immunity "as long as their actions could reasonably have been thought consistent with the right they are alleged to have violated." *Id.* at 638, 107 S.Ct. at 3038. "Under the doctrine of qualified immunity, government officials acting in their official capacities are protected from being sued in their individual capacities for damages if their actions did not 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Greene v. Reeves,* 80 F.3d 1101, 1104 (6th Cir.1996)(quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Qualified immunity allows public officials to perform their duties without threat of liability when the law in a particular situation is not clearly established. "[T]he law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter v. Alabama A & M Univ.,* 28 F.3d 1146, 1149 (11th Cir.1994)(en banc)(quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039).

The determination of qualified immunity involves a two-step inquiry. First, the court must determine whether the plaintiff has shown a violation of a constitutionally protected right. *Brennan v. Township of Northville,* 78 F.3d 1152, 1154 (6th Cir.1996)(citing *Megenity v. Stenger,* 27 F.3d 1120, 1124 (6th Cir.1994)). If the plaintiff succeeds on that showing, "the second step is to determine whether the right is so 'clearly established' that a 'reasonable official would understand that what he is doing violates that right.'" *Brennan,* 78 F.3d at 1154 (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039).

The Greens' first claim, that Kling and Hare denied them due process by in-

forming them that they did not have the right to an administrative appeal of the decision to fund the Morawski loan, fails to meet the first step of the inquiry because the Greens do not have a property right in information regarding administrative appeals. *See Shaner v. United States*, 976 F.2d 990, 995 (6th Cir.1992)(finding plaintiffs' claim of property right in administrative appeals information without merit); *cf. Ramey v. Block*, 738 F.2d 756, 762 (6th Cir.1984)(holding that Secretary of Agriculture not required to notify borrower of loan deferral relief). The Greens attempt to distinguish *Shaner* on the basis that the instant case involves denial of a right to appeal rather than denial of *notice* of the right to an appeal. The Court finds this analysis flawed. Kling advised the Greens that they did not have a right to appeal the decision to fund the Morawski loan because the Greens were not adversely affected by that decision. (Defs.' Br. Supp. Mot. Ex. 5 at 0056.) However, the remedy for Kling's incorrect nonappealability determination, which the Greens received, was an appeal of the nonappealability determination. *See* 7 C.F.R. § 1900.55(a). Thus, the Greens were not denied their right to appeal; they were instead only denied notice of a right to appeal, which is similar to the claims advanced in *Shaner* and *Ramey*. Furthermore, even if the Greens were able to meet the first step of the qualified immunity analysis, their claim would fail on the second step because the Greens have not shown that they had a clearly established right to notice that they could appeal a nonappealability determination. Therefore, Defendants Hare and Kling are entitled to qualified immunity on this claim.

■■■ The Court also finds that Defendants Kling, Hare, Partridge, Rosenquist, and Spike are entitled to qualified immunity

on the Greens' remaining claims because the Greens have failed to show that any of the Defendants violated any clearly established right. By way of example, the Greens have failed to cite any case in support of their equal protection claim that would have put Kling on notice that her decision to take action to correct the Michigan office's improper application of FSA regulations before taking such action in other states might result in a violation of a borrower's equal protection rights. Qualified immunity is designed to protect government officials in precisely this type of situation.[3] Moreover, the Greens have not cited any specific testimony by Defendant Hinton during the administrative hearing to support their claim that he gave misleading information to the hearing officer regarding the Greens' entitlement to a preference.

■■■ The Court also finds that Defendants are entitled to summary judgment on the Greens' constitutional claims because the alleged acts did not rise above negligence. "It is well-established that 'due process "is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or property." ' " *Shaner*, 976 F.2d at 995 (quoting *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 281–82 (6th Cir.1987)(en banc)(quoting *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986))(emphasis in original)). Giving the Greens the benefit of the doubt, the acts complained of were, at most, erroneous administrative decisions that did not rise to the level of gross negligence.

## IV. APA Review and FOIA Claim

In their final claim, the Greens seek review of the FSA's actions by this Court. The

---

3. The Greens' constitutional claims are based largely upon discretionary acts or decisions by FSA officials which do not rise to the level of constitutional violations simply because they may have been made in error:

"What [the plaintiff's] contention does not face is that if his view were to prevail, every case involving a discretionary administrative decision would automatically become a constitutional case merely by allegation that the law was otherwise than the decision reached. Yet the entire issue in the judicial review of administrative action always is whether the adminis-

trative decision was erroneous. The Constitution is not implicated unless the decision goes beyond mere error to an intentional or reckless disregard of the constitutional rights of the person against whom the administrative decision is made. *Mere failure to make the 'correct' administrative decision does not rise to the level of a constitutional violation.*"

*Ashbrook v. Block*, 917 F.2d 918, 925 (6th Cir.1990)(quoting *Bass v. United States Dep't of Agric.*, 737 F.2d 1408, 1415 (5th Cir.1984)(alteration and emphasis in original)).

Greens seek review of the following actions: (a) the FSA's alleged failure to give preference to their loan pursuant to 7 C.F.R. §§ 1910.3(a) and 1943.10(a); (b) approval of the Greens' loan subject to availability of funds; (c) failure of the County Supervisor to request a check or an advance of funds, or take any other action as required by 7 C.F.R. § 1943.35; (d) the changing of funding policy in Michigan which retroactively affected the Greens' loan application; (e) the closing of the Greens' file without following proper procedures; and (f) failure to comply with FOIA.

 An agency's action must be upheld unless it is " ' "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or if the action failed to meet statutory, procedural, or constitutional requirements ... [or] if the action was not supported by "substantial evidence." ' " *Tuepker v. Farmers Home Admin.*, 525 F.Supp. 237, 240 (W.D.Mo.1981)(quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414, 91 S.Ct. 814, 822, 28 L.Ed.2d 136 (1971)(quoting 5 U.S.C. § 706)), *aff'd*, 684 F.2d 550 (8th Cir.1982). An agency's interpretations of congressional acts, and even more so of its own regulations, are entitled to great deference. *United States v. Baxter Healthcare Corp.*, 901 F.2d 1401, 1407 (7th Cir.1990).

 The Court has reviewed each ground raised by the Greens for review under the APA and concludes that none of the FSA's actions were arbitrary, capricious, an abuse of discretion, or contrary to law. The Court has rejected several of the arguments raised by the Greens in the context of other claims. With regard to the Greens' claim that they were not accorded a preference as required under 7 C.F.R. §§ 1910.3(a) and 1943.10(a), the Court has found that Defendants have submitted unrebutted evidence in the affidavit of Dee Cole showing that the Morawskis were also entitled to a preference and received priority over the Greens by virtue of the fact that their application was filed prior to the Greens' application. With regard to

the Greens' claim that Rosenquist failed to request a check or an advance of funds as required by 7 C.F.R. § 1943.35, the Court has found that Rosenquist was not required to request an advance of funds under that section because funds were not available for the Greens' loan. The language of the regulation, to the extent that it is mandatory, depends entirely upon the availability of funds. Finally, with regard to the Greens' claim that Kling improperly changed Michigan's funding policy, the Court found that Kling properly corrected the manner in which the Michigan office was applying the funding regulations. Kling's corrective action did not result in adoption of a new policy or a change in a existing policy.

 The Court also finds the Greens' argument that the FSA was not authorized to approve their loan "subject to availability of funds" to be without merit. The "approved subject to availability of funds" status is consistent with the enabling statute, 7 U.S.C. § 1983a. When ˙read together, §§ 1983a(b)(1) and (2) provide for approval by the Secretary in situations where funds may not be immediately available. In such cases, the Secretary is to provide loan proceeds to the applicant "as soon as practicable (but in no event later than 15 days unless the applicant agrees to a longer period) after sufficient funds ... become available." 7 U.S.C. § 1983a(b)(2). The Greens' argument that the Michigan office improperly closed their loan file is also without merit. The alternate financing which the Greens obtained satisfied their loan needs and, under 7 C.F.R. § 1943.12(a)(6), rendered them ineligible for a loan. Thus, closure of the Greens' file was not improper.

 The Greens' final claim is that Defendant Spike improperly deleted the names of borrowers and loan amounts from the 1997 list of Michigan FSA direct loans which Spike furnished to their counsel pursuant to a FOIA request.[4] Spike deleted the names of borrowers and loan amounts pursu-

---

4. The Greens also contend that Spike improperly withheld the lists of direct loans made prior to 1997. Spike's letter indicates that the files were not withheld, but instead were unavailable. (Defs.' Mem. Supp. Mem. Ex. 6 at 0015.) The Greens have not submitted any evidence which shows that the pre–1997 records were actually available. Therefore, the Court finds that the pre–1997 records do not present a FOIA issue for review.

ant to FOIA Exemption 6, which exempts from disclosure requirements "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The burden of proof is upon the government to justify the exemption. *Ingle v. Department of Justice,* 698 F.2d 259, 264 (6th Cir.1983)(quoting S.Rep. No. 1200, 93d Cong., 2d Sess. 9 (1974), reprinted in 1974 U.S.C.C.A.N. 6267, 6287–88 (Conference Report)).

■ The determination of whether Exemption 6 applies to particular information involves a two-part inquiry. *Schell v. United States Dep't of Health & Human Servs.,* 843 F.2d 933, 937 (6th Cir.1988). The Court must determine: (1) whether the document contains "personnel, medical or 'similar' data"; and (2) if so, whether disclosure would amount to a " 'clearly unwarranted invasion of personal privacy.' " *Id.* (quoting *Heights Community Congress v. Veterans Admin.,* 732 F.2d 526, 529 (6th Cir.1984)). The second inquiry requires a balancing of the nature of the privacy interest against the public interest in the release of the information. *See Norwood v. Federal Aviation Admin.,* 993 F.2d 570, 574 (6th Cir.1993).

The information sought by the Greens— loan information on individuals—falls well within Exemption 6. Individuals have a privacy interest in their names and addresses that weighs in favor of nondisclosure. *See Heights,* 732 F.2d at 529. This "privacy interest becomes more significant, however, when names and addresses are combined with financial information." *Aronson v. United States Dep't of Hous. & Urban Dev.,* 822 F.2d 182, 186 (1st Cir.1987) (holding that Department of Housing and Urban Development properly withheld names of mortgagors who were owed "distributive shares" for one year after vesting); *accord Schoettle v. Kemp,* 733 F.Supp. 1395, 1398 (D.Haw.1990); *Farnum v. United States Dep't of Hous. & Urban Dev.,* 710 F.Supp. 1129, 1134 (E.D.Mich.1988); *see also Gannett Satellite Info. Network, Inc. v. United States Dep't of Educ.,* No. 90–1392, 1990 WL 251480, at *4 (D.D.C.1990)(observing that "[i]f a person who is owed a substantial amount of money has a privacy interest, it is inconceivable why a person who owes money would not have a

similar privacy interest"). As Defendants point out, the privacy interest in this case is heightened by the fact that the FSA is a lender of last resort, which may connote a tenuous financial position.

The Court must balance the privacy interest of the borrowers against the public interest in disclosure of the information sought. *Norwood,* 993 F.2d at 574. The Greens have not identified a public interest in the information they seek, and the Court cannot discern how information concerning loans to other borrowers would benefit the public. Moreover, loan information on unknown borrowers would not enlighten citizens about the inner-workings of the FSA. *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 773, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989). Thus, it appears that the Greens are seeking the information for their own purposes. Accordingly, the FSA properly omitted the names of the borrowers and the amounts of their loans from the list.

### Conclusion

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment.