[No. 34256. Department One. May 1, 1958.]

SAM ELDER *et al., Respondents,* v. CISCO CONSTRUCTION COMPANY, *Appellant.*

CARMI SHERMAN HAWLEY, *Respondent,* v. CISCO CONSTRUC-TION COMPANY, *Appellant.*[1]

*Gordon H. Sweany, Leo A. Anderson,* and *Carl P. Zapp,* for appellant.

*Lycette, Diamond & Sylvester,* for respondents.

[1] Reported in 324 P. (2d) 1082.

WEAVER, J.—This is an action for damages for personal injuries resulting from an automobile accident that involved plaintiffs and one Roy W. Hurst, who, it was alleged, .

" . . . was then and there acting for and on behalf of the defendant Cisco Construction Company, and was then and there in the performance of his duties with the said defendant Cisco Construction Company, and acting on their behalf."

On motion of plaintiffs, Roy W. Hurst was dismissed as a party defendant because service of process had not been obtained on him.

The construction company, an Oregon corporation, appeals from a judgment entered after a jury verdict in the two cases, consolidated "for trial and all purposes thereafter."

The vicarious liability of defendant construction company depends entirely upon whether the plaintiffs have proved, as a matter of law, that Roy W. Hurst was acting within the course and scope of his employment at the time of the accident.

Defendant company had two job sites where it was constructing missile launching bases—one near Redmond, the other several miles from Renton, Washington. A full construction crew was maintained at each site; however, on rare occasions, some men worked at either site. When the construction crew reported for work at eight a. m. on the day of the accident, Mr. Hanson, the superintendent of the Redmond job site, told Mr. Hancock, a foreman, to have four or five men, a steel-tying crew, go to the Renton job site for work during that day. The four men selected arrived at the Redmond site that morning by private transportation. In order to report to the Renton site, it was necessary for the men to provide their own transportation; and the men decided among themselves that they would drive to Renton in Mr. Hurst's car. It was understood among them that Mr. Hurst would bring them back to the Redmond *area.* They arrived at the Renton job site about nine a. m. and were paid for their time in transit.

The crew quit work at the Renton job site at the usual time, 4:30 p. m. Their hourly pay stopped. They were free to do as they chose.

One member of the crew—a Lee (whose last name does not appear on the record)—returned to his home on Lake Sammamish in another car. The other four members of the steel-tying crew—Mr. Hancock, who then lived in Kirkland, Mr. Hurst, who lived in Bellevue, Mr. Call and Mr. Boggett, who lived in Redmond—drove to Renton, where they spent several hours in various beer taverns.

Mr. Hancock did not own a car. Mr. Call, whose car had been driven from the Redmond job site to Redmond by a friend, had agreed to drive Mr. Hancock to his home in Kirkland after they returned to Redmond with Mr. Hurst. It would appear that Mr. Boggett was the only member of the crew who had left an automobile at the Redmond job site.

Mr. Hurst was driving when the four men left Renton to return to the Redmond area by the same route they had used that morning. The accident, in which Mr. Hurst's car collided with plaintiffs' car, occurred at 7:50 p. m.

Mr. Hurst was neither allowed nor paid mileage, maintenance, or transportation costs for the use of his car. One of defendant's officers testified that it was company policy and practice not to furnish transportation to and from job sites.

Defendant introduced no testimony; it now assigns error to the denial of its challenge to the sufficiency of plaintiffs' evidence and overruling of its motion for a directed verdict.

If defendant construction company is to be held liable for damages suffered by plaintiffs as a result of the automobile accident, it must be by reason of the doctrine of *respondeat superior*—the doctrine that holds a master responsible for the acts of his servant when the servant acts within the course and scope of his employment.

The highly indefinite phrase—"within the course and scope of his master's business" or "within the course and scope of his employment"—

" . . . refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though improper ones, of carrying out the master's orders.

" . . . It has been said that in general the servant's conduct is within the scope of his employment if it is of the kind which he is authorized to preform, occurs substantially within the authorized limits of time and space, and is actuated, at least in part, by a desire to serve the master." Prosser, Torts (2d ed.) 352.

In Restatement, Agency, § 228, the general statement reads as follows:

"(1) Conduct of a servant is within the scope of employment if, but only if:

"(a) it is of the kind he is employed to perform. . . .

"(b) it occurs substantially within the authorized time and space limits . . . ; and

"(c) it is actuated, at least in part, by a purpose to serve the master."

A "servant" is defined in Restatement, Agency, § 220, as

" . . . a person employed to perform service for another in his affairs and who, with respect to his physical conduct in the performance of the service, *is subject to the other's control or right to control.*" (Italics ours.)

■ The rules applicable to situations such as the instant case may be stated with comparative ease; the difficulty occurs in determining whether or not certain specific facts fall within or without the rules. In the case at bar, there is little dispute in the material evidence; and, of course, after verdict and judgment, plaintiff's version of the disputed facts is accepted.

■ As a general rule, an employee traveling from the place of work to his home *or other personal destination,* after completing his day's work, cannot ordinarily be regarded as acting in the scope of his employment so as to charge the employer for the employee's negligence in the operation of the latter's own car. Annotation: Employer's liability for negligence of employee in driving his own car. 52 A. L. R. (2d) 287, 311 (1957).

■ Although the facts are not apropos, the latest explanation of the phrase "in the course of his employment" is found in *Greene v. St. Paul-Mercury Indemnity Co.*, 51 Wn. (2d) 569, 573, 320 P. (2d) 311 (1958), wherein this court said:

"The test adopted by this court for determining whether an employee is, at a given time, *in the course of his employment,* is whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, *or* by specific direction of his employer; *or,* as sometimes stated, *whether he was engaged at the time in the furtherance of the employer's interest.*" (Citing cases.)

In *Carroll v. Western Union Telegraph Co.*, 170 Wash. 600, 17 P. (2d) 49 (1932), the plaintiff was injured by a motorcycle owned and driven by a messenger of defendant company. During working hours, the servant sought and received permission from his superior to go and purchase an accessory for his motorcycle. His hourly pay continued during his absence. The accident occurred when he was returning to his place of employment. This court affirmed a judgment for defendant employer, entered notwithstanding a jury verdict for plaintiff. The court said:

"He left the master's place of business not on the master's orders or in the course of the performance of any duty for the master, but solely for his own personal and private purpose of procuring accessories for his own motorcycle. . . .

"But it is argued that the boy, in order to hold his position and perform his duties, was required to have a motorcycle in proper repair, and the master was concerned in seeing to it that the employee was so equipped. Likewise, to hold his position, the boy would require food, clothing, proper shelter, and perhaps medical care and other things too numerous to mention. Could it be reasonably argued that, if, after a hard day's work, the boy was on his way home to obtain food, rest and care necessary to fit him for the next day's work, he would therefore then be about the master's business and in the course of his employment? We see no difference in principle between the two situations." (p. 603)

In *Bourus v. Hagen,* 192 Wash. 588, 589, 74 P. (2d) 205 (1937), the servant was driving to work when he collided

with plaintiff's car. The facts disclose that the servant used his own car in his work; that he received compensation for its use when so used; that his employer in no wise restricted the use of his car. We affirmed a challenge to the sufficiency of the evidence, saying,

"The rule supported by the weight of authority is that an employee, merely going to or from work in his own car, is not in the course of his employment, even though he may be allowed compensation by the employer for the use of the car in and about the latter's business. [Citing cases.]

"The rule is supported, by analogy at least, in our own workmen's compensation cases, holding that a workman going to or from work is not in the course of his employment. [Citing cases.]"

See *Roletto v. Department Stores Garage Co.,* 30 Wn. (2d) 439, 191 P. (2d) 875 (1948).

It would unduly extend this opinion to analyze the authorities cited by plaintiff of which *Rice v. Garl,* 2 Wn. (2d) 403, 98 P. (2d) 301 (1940), is illustrative. They are distinguishable either under their facts or for the reasons set forth in *Bourus v. Hagen, supra.*

■ We find nothing in the record before us that removes the facts of the instant case from the operation of the general rule. Use of Mr. Hurst's automobile was not an incident of his contract of employment. It does not appear that it was required in the pursuit of his duties as an employee. The construction company maintained no control whatsoever over the method of transportation used by its employees and, at the time of the accident, had no control or right to control Mr. Hurst or his automobile. He was not acting under the direction of his employer. His employment and compensation for the day had ceased. The stop in Renton to visit the taverns was not a "deviation," for the men, including Mr. Hurst, were free to do as they pleased. They were at liberty to return to the Redmond area or to any personal destination of their choice; hence, Mr. Hurst could not be "engaged at the time in the furtherance of the employer's interest." Any agreement between the men is immaterial

to the issue, for the construction company was not a party to it.

Under almost identical facts, the court, in *Romero v. Hogue* (La. App.), 77 So. (2d) 74 (1954), held that the employer was not liable.

The trial court should have granted defendant's motion for a directed verdict. The judgment is reversed, with instructions to dismiss the consolidated actions.

HILL, C. J., MALLERY, FINLEY, and OTT, JJ., concur.