Donald and Patsy ISRAEL, husband and wife, Richard and Shirley Quinton, husband and wife, all d/b/a Israel & Quinton Farms, Plaintiffs,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, Defendant.

No. 00–C–223–C.

United States District Court,
W.D. Wisconsin.

March 2, 2001.

William L. Norine, Anderson & Norine, Grantsburg, WI, for plaintiffs.

Steven O'Connor, Assist. U.S. Atty., Madison, WI, for defendant.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action in which plaintiffs Donald and Patsy Israel and Richard and Shirley Quinton seek judicial review of the Farm Service Agency's determination that plaintiffs are responsible for $96,500 in shared appreciation pursuant to a shared appreciation agreement dated September 15, 1989, a decision that was affirmed by the National Appeals Division and the Director of the National Appeals Division. (The Farm Service Agency is an administrative agency of the United States Department of Agriculture.)

Originally, plaintiffs sought judicial review of the agency's determination (count 1); a declaration as to the meaning of the shared appreciation agreement (count 2); injunctive relief for a state claim of negligent misrepresentation (count 3); and injunctive relief prohibiting defendant from collecting any appreciation (count 4). In a stipulation and order entered on October 23, 2000, the parties agreed to dismiss counts 2, 3 and 4, set a hearing for oral argument on April 16, 2001, and brief the issue of plaintiffs' challenge to the agency's determination that they are responsible for $96,500 in shared appreciation. Briefing on plaintiffs' request for judicial review is now complete. The decision of the Director of the National Appeals Division will be affirmed because I conclude that (1) when he determined that the shared appreciation agreement allowed the government to recover 50% of the appreciated value of plaintiffs' property upon the expiration of the agreement, his decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence," 5 U.S.C. § 706(2)(A), (E); and (2) plaintiffs cannot rely on the doctrine of equitable estoppel to prevent defendant from collecting the appreciation.

Subject matter jurisdiction is present under 7 U.S.C. § 6999 ("A final determination of the Division shall be reviewable and enforceable by any United States district court of competent jurisdiction in accordance with chapter 7 of Title 5.").

From the administrative record, I find the following facts.

## FACTS

### A. *Shared Appreciation Agreement*

Plaintiffs Donald and Patsy Israel and Richard and Shirley Quinton own a farming partnership called Israel and Quinton Farms. In 1988, Israel and Quinton Farms entered into negotiations with Farm Service Agency (formerly Farm Home Administration) for a write-down of their existing loans. On September 15, 1989, the parties signed a shared appreciation agreement, which was a condition to the debt write-down. At that time, plaintiffs had $239,478.91 in debt. Pursuant to the agreement, plaintiffs received a write-down in the amount of $100,357.34, leaving a restructured debt of $139,121.57, which was secured by preexisting real estate mortgages. At the time of the agreement, the market value of the property securing the loan was $152,000.

The shared appreciation agreement provides:

As a condition to, and in consideration of [Farm Service Agency] writing down the above amounts and restructuring the loan, borrower agrees to pay [Farm Service Agency] an amount according to one of the following payment schedules:

1. Seventy five (75) percent of any positive appreciation in the market value of the property securing the loan as de-

scribed in the above security instrument(s) between the date of the Agreement and either the expiration date of this Agreement or the date the borrower pays the loan in full, ceases farming or transfers title of the security, if such event occurs four (4) years from the date of this Agreement.

2. Fifty (50) percent of any positive appreciation in the market value of the property securing the loan above as described in the security instruments between the date of this Agreement and either the expiration date of the Agreement or the date Borrower pays the loan in full, ceases farming or transfers title of the security, if such event occurs after four years but before the expiration date of this Agreement.

The amount of recapture by [Farm Service Agency] will be based on the difference between the value of the security at the time of disposal or cessation by Borrower of Farming and the value of the security at the time this Agreement is entered into. If the borrower violates the terms of this agreement [Farm Service Agency] will liquidate after the borrower has been notified of the right to appeal.

In notes dated April 5, 1994, Farm Service Agency loan officer Michael Drewiske wrote, "Richard Quinton and Donald Israel . . . . thought they might be able to get a loan from a Bank to refinance [Farm Service Agency] loan. I indicated that at such a time as they pay in full the shared appreciation agreement kicks in."

In a letter to plaintiffs Patsy and Donald Israel dated January 26, 1998, Farm Service Agency loan official Karolyn Corbett wrote,

When Donald and Richard were in our office to make your payment, you had some questions about your [Farm Service Agency] loan account.

The enclosed printout was obtained after your last payment was applied. Since we did a deferral action on your loan in 1989, the interest that was deferred has been paid in increments since that time.

That deferred interest amount does not show up on the first page of the printout. I have high-lighted the figures that add up to your payoff figure (the figure circled in red).

Therefore, your payoff consists of:

| | | |
|---|---|---|
| QUPR (principal) | = | $109,574.90 |
| QUIN (interest) | = | $ 586.91 |
| CPIN (deferred interest) | = | $ 8,748.45 |
| | | $118,910.26 |

In letters to plaintiffs dated April 24, 1997, November 6, 1997 and October 5, 1998, District Credit Manager David Borman wrote,

Our records indicate that on September 15, 1989, the Farm Service Agency (FSA) wrote down $100,357.34 of your debt. As a consideration for this write down you were required to sign a Shared Appreciation Agreement (copy attached).

Essentially what this document says is that if the value of your real estate increases after the date of the write down, you will be responsible for repaying some or all of the debt [Farm Service Agency] wrote down. If any repayment is due it will become due when *any one* of the following events happens.

1. Ten years has passed.

2. You pay the rescheduled loan in full.

3. You ceased farming.

4. You transferred title to the property.

B. *Administrative Proceedings*

On June 30, 1999, the Farm Service Agency wrote plaintiffs letters stating, "The purpose of this letter is to inform you

that the Shared Appreciation Agreement (SAA) you entered into as a result of receiving a 'debt write down' will expire on September 14, 1999, which is 10 years after the date you signed it.... We have determined the amount of shared appreciation due is $96,500." Farm Service Agency calculated the amount due by using the following equation:

$345,000 (current appraisal)
- $152,000 (1989 appraisal)
$193,000 (net appreciation)
(shared appreciation agreement sharing percentage)
x .50
$ 96,500

In letters to plaintiffs dated September 9, 1999, the Farm Service Agency denied their requests for reconsideration and affirmed its decision to require them to pay $96,5000 in shared appreciation. The agency noted, "The Farm Service Agency is bound by the Code of Federal Regulations. [7 C.F.R. § 1951.914] covers servicing Shared Appreciation Agreements. [7 C.F.R. § 1951.914(b) ] states in part, shared appreciation is due at the end of the term of the Shared Appreciation Agreement."

On October 7, 1999, plaintiffs appealed to the National Appeals Division of the Department of Agriculture. (Plaintiffs' appeals were consolidated.) On November 18, 1999, a scheduling conference was held before Farm Service Agency Hearing Officer David Benner. In letters dated December 1 and 2, 1999, plaintiffs requested the issuance of subpoenas for the production of three witnesses: two Farm Service Agency employees who had made statements to plaintiffs regarding the shared appreciation agreement (Michael Drewiske and Karolyn Corbett) and one former county agent who had an opinion on the appraisal of plaintiffs' property (Russell Kiecker). In a notice dated December 8, 1999, Benner denied plaintiffs' request for subpoenas. On December 9, 1999, an evi-dentiary hearing was held before Hearing Officer Benner pursuant to 7 U.S.C. § 6997(c). At the hearing, plaintiffs testified about what Michael Drewiske and Karolyn Corbett had told them about the recapture provision in the agreement. On January 3, 2000, relying on 7 C.F.R. §§ 1951.914, 1922.201, Hearing Officer Benner held that the Farm Service Agency's decision to demand $96,500 in shared appreciation was not erroneous. Benner wrote,

The Appellants' Shared Appreciation Agreement (SAA) expired on September 14, 1999.... Therefore the Agency decision to calculate shared appreciation due is correct according to regulations.

The Appellants argue that the agreement "expired" on September 14, 1999, meaning that no shared appreciation is due. They also argue that they were told that this was the case at the time of signature. However, the agreement and the regulation clearly state that shared appreciation is due at the expiration of the agreement.

On or about February 4, 2000, plaintiffs appealed to the Director of the National Appeals Division for the Department of Agriculture. In a decision dated March 17, 2000, Director Norman Cooper upheld the hearing officer's decision, concluding that "[a]ppellants failed to prove by a preponderance of evidence that the Agency decision was erroneous." In a written decision, Director Cooper stated the following:

The Hearing Officer's decision is supported by substantial evidence as follows:

1. The Appellants received a $100,357.34 write-down of Agency debt and entered into a [Shared Appreciation Agreement] on September 15, 1989. The [Shared Appreciation Agreement]

expired on September 14, 1999. (Findings of Fact (FOF) 1 and 2.)

2. The market value of the Appellants' property was determined to be $152,000 at the time the [Shared Appreciation Agreement] was executed. As of May 20, 1999, the property was determined to have a market value of $345,000. The property valuation was conducted by a Certified General Appraiser and was performed in accordance with the Uniform Standards of Professional Appraisal Practice (USPAP). (FOF 2 and Hearing Officer Conclusion 2.)

3. The Agency considered the current market value of the Appellants' property ($345,000), the market value upon execution of the [Shared Appreciation Agreement] ($152,000), and determined that the amount of recapture was 50 percent of the appreciated market value ($193,000) or $96,5000. (FOF 2 and 3.)

4. The Appellants agreed to pay 50 percent of any positive appreciation in value of the property during the term of the [Shared Appreciation Agreement] (September 15, 1989, to September 14, 1999). (FOF 1)

5. On September 9, 1999, the Agency affirmed its decision to require payment of $96,500 in appreciation under the Terms of the [Shared Appreciation Agreement]. (CR I, Tab 6.)

Director Cooper concluded the following:

Regulations at 7 C.F.R. § 1951.914(b) and the [Shared Appreciation Agreement] specify that the Agency can recapture a portion of the written-off debt by taking a share of any positive appreciation in the value of the real property. The Agency must collect 50 percent of any positive appreciation in the market value of the security between the date the [Shared Appreciation Agreement] was executed and the date it expires....

Notwithstanding the Appellants' arguments on review that the [Shared Appreciation Agreement] is ambiguous and regulations are irrelevant, the terms of the [Shared Appreciation Agreement] are clear and published regulations, by law, are a proper basis for the Hearing Officer's determination.... Substantial evidence supports the Hearing Officer's determination that the Agency did not err in establishing the amount of the recapture due under the [Shared Appreciation Agreement] and requiring payment of such.

## OPINION

### A. *Background*

The Farm Service Agency makes farm operating loans, farm ownership loans and emergency loans. *See* 7 C.F.R. Parts 1941, 1943 and 1945. The Agricultural Act of 1987 allows farmers who are in default to apply for various loan servicing and debt restructuring options. One of the benefits offered through the program is the "writing down of principal and accumulated interest charges" of Farm Service Agency loans. 7 U.S.C. § 1991(b)(3)(C); 7 C.F.R. § 1951.909(e)(4) [formerly 7 C.F.R. § 1951.909(e)(5)]. A borrower who qualifies for a write-down on a loan secured by real estate is required to enter into a shared appreciation agreement. *See* 7 C.F.R. § 1951.909(e)(4)(vi) [formerly 7 C.F.R. § 1951.909(e)(5)(iii)(D)].

### B. *Standard of Review*

The Administrative Procedure Act, 5 U.S.C. §§ 701–706, sets forth the standards for judicial review of an agency's decision. Section 706(2) of Title 5 of the United States Code states, "The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law ... (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute."

■■■ An agency's legal determinations will be affirmed as long as they are not arbitrary or capricious and are in accordance with the law. *See Sierra Resources Inc. v. Herman,* 213 F.3d 989, 992 (7th Cir.2000). The arbitrary and capricious standard is highly deferential: even if a reviewing court disagrees with an agency's action, the court must uphold the action if the agency considered all relevant factors and the court can discern a rational basis for the agency's choice. *See Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *overruled on other grounds in Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The agency's decision is not arbitrary or capricious as long as " 'the agency's path may be reasonably discerned.' " *Mount Sinai Hospital Medical Center v. Shalala,* 196 F.3d 703, 708 (7th Cir.1999).

"The substantial evidence standard of the Administrative Procedures Act is generally used as the standard of review for an agency's factual findings." *Mount Sinai Hospital,* 196 F.3d at 709; *see also Sierra Resources,* 213 F.3d at 989. Under this deferential standard of review, the court reviews the entire record to see whether it contains " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Aegerter v. City of Delafield, Wisconsin,* 174 F.3d 886, 889 (7th Cir.1999) (quoting *Dilling Mechanical Contractors, Inc. v. NLRB,* 107 F.3d 521, 524 ( 7th Cir.1997)).

## C. Review of Decision

Plaintiffs contend that defendant Farm Service Agency erred in determining that they owe $96,500 in shared appreciation because the plain language of the shared appreciation agreement dictates that recapture of appreciation occurs only upon the happening of one of the following three contingencies during the agreement period: (1) cessation of farming; (2) transfer of the property; or (3) payment in full. (Plaintiffs are not challenging defendant's appraisal of their property as they did before the National Appeals Board.) Defendant responds that the agreement states that recapture occurs at the end of the ten-year period or earlier if any one of the three triggering events occurs and that plaintiffs had notice of the terms by way of the language of the shared appreciation agreement, 7 U.S.C. § 2001, 7 C.F.R. § 1951.914(b)(1999) and the notice sent to plaintiffs by the Farm Service Agency before they entered into the program.

■■ The language of the agreement requires recovery of appreciation "between the date of this Agreement and *either* the expiration date of the Agreement *or* the date Borrower pays the loan in full, ceases farming or transfers title of the security." (Emphasis added.) Defendant points to the agreement's use of the disjunctive "or" between the alternative points at which the recapture payment can become payable as support for its position that the agreement allows for recovery of appreciation at the end of the agreement. Plaintiffs contend that the agreement does not provide a formula for recapture at the expiration date of the agreement and that the agreement specifies that the amount of recapture "will be based on the difference between the value of the security at the *time of disposal or cessation* by Borrower of farming and the value of the security at the time this Agreement is entered into."

(Emphasis added). The director found that the language of the shared appreciation agreement was clear. I cannot find that this decision was not rational or that the director failed to consider the language of the agreement and the parties' arguments as to its meaning in reaching his conclusion. Although the agreement could have been written more artfully, it conveyed the basic concept that borrowers had to give up a share of the appreciation of the loan collateral in return for the debt write-down and that this share would become due when the agreement expired or earlier if the agreement was terminated upon the happening of a specified event.

Defendant's position is supported strongly by the language of the relevant statute and accompanying regulations. Plaintiffs' loan was secured by a real estate mortgage, which states that the shared appreciation agreement is entered into pursuant to 7 U.S.C. § 2001. 7 U.S.C. § 2001(e)(4) states "Recapture shall take place at the end of the term of the agreement, or sooner—(A) on the conveyance of the real security property; (B) on the repayment of the loans; (C) if the borrower ceases farming operations." The agency's regulations state, "Shared appreciation is due at the end of the term of the Shared Appreciation Agreement, or sooner, if one of the following events occurs: (1) The sale or conveyance of any or all the real estate security ...; (2) Repayment of the loans ...; (3) The borrower or surviving spouse ceases farming operations or no longer receive farm income....; (4) The notes are accelerated." 7 C.F.R. § 1951.914(b)(1999). The director was correct in his determination that the hearing officer was entitled to rely on the relevant statutes and regulations in construing the language of the shared appreciation agreement. The quoted language demonstrates that the director did not err in concluding that appreciation is recoverable at the end of the ten-year term.

Plaintiffs contend that defendant has failed to show that they received the notice about the terms of the program before they signed the agreement. Regardless whether plaintiffs received such notice, the mortgage papers that were attached to the agreement referred specifically to 7 U.S.C. § 2001. Furthermore, plaintiffs received notice about the impending recapture of appreciation upon termination of the agreement in letters dated April 24, 1997, November 6, 1997 and October 5, 1998.

In support of their interpretation of the agreement, plaintiffs point to statements made to plaintiffs by two of defendant's employees before and after the agreement was signed that led them to believe that recapture would not occur unless they ceased farming or transferred title to the security. After hearing testimony from plaintiffs about what defendant's employees had told plaintiffs about the meaning of the recapture provision, the hearing officer and the director was obligated to consider such testimony and give it the weight they deemed appropriate. An examination of the decisions of the hearing officer and the director demonstrates that they were persuaded that the language of the agreement coupled with the language of the applicable regulations mandated recapture of appreciation upon the expiration of the term of the agreement. It is not the role of the court to reweigh the evidence that was presented to the agency; rather, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Overton Park*, 401 U.S. at 416, 91 S.Ct. 814. I cannot say that there was a clear error of judgment in the agency's interpretation of the shared appreciation agreement. In this regard, the reasoning in *In re Moncur*, No. 98–

03213, slip op. at 9 (Bankr.D.Idaho May 27, 1999), is persuasive. "Without question, the [Farm Service Agency's loan] program contemplated a recapture payment at the conclusion of the [shared appreciation agreement] term if payment in full of the write-down balance had not been made during the term of the [agreement]." *Id.*

Plaintiffs contend that the policy behind the loan program supports their interpretation that they do not owe defendant any shared appreciation, but their argument is not convincing. Plaintiffs argue that it is good policy to provide an incentive in the form of total loan forgiveness with no requirement of shared appreciation so that farmers will abide by the terms of the loan program and participate in it for at least ten years. The agency did not discuss policy implications in its decisions. It is not appropriate to speculate as to what role, if any, such implications played in the decision making process. However, it can be argued that although "the program allows the borrower to escape repayment of a portion of its debt, it recognizes that it would be unfair to also allow the borrower to retain the full benefit of the appreciation in the value of the farm during the repayment period. This is reasonable policy." *In re Moncur,* slip op. at 9. *See also Cerniglia v. Glickman,* 118 F.Supp.2d 27, 32 (D.D.C.2000) (quoting 7 U.S.C. § 2001(a)(1)) ("One need not parse any text to understand that the [Farm Service Agency's] loan servicing program seeks to help farmers in times of financial distress.... Such assistance is not entirely altruistic. By giving up some of its returns, the government is able to minimize 'losses to the Secretary on such loans.'") It is not for this court to decide whether plaintiffs' policy view or defendant's is more prudent. After reviewing the administrative record, including the transcript of the evidentiary hearing, I cannot find that the director's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

## C. *Estoppel*

Plaintiffs contend that defendant is estopped from collecting $96,500 in appreciation because plaintiffs relied to their detriment on statements made by defendant's officers that no recapture would be owed upon the expiration of the 10–year agreement. Plaintiffs point to the following evidence in support of their estoppel argument: (1) statements by loan officer Michael Drewiske to plaintiffs before they signed the agreement; (2) Drewiske's notes dated April 5, 1994, in which he indicated that he had told plaintiffs that the shared appreciation would come due if they paid off the loan early; and (3) a letter dated January 26, 1998 from loan officer Karolyn Corbett in which she calculated plaintiff's pay off amount but did not include any amount for shared appreciation.

 Plaintiffs argue that defendant is not entitled to immunity from estoppel because it acted in a proprietary and not a sovereign capacity. Plaintiffs are mistaken. The government acts in a proprietary capacity when it undertakes activities "primarily for the commercial benefits of the government." *REW Enterprises, Inc. v. Premier Bank, N.A.,* 49 F.3d 163, 170 (5th Cir.1995). In order to obtain a loan from the Farm Service Agency, borrowers must demonstrate that they are "unable to obtain sufficient credit elsewhere to finance their actual needs at reasonable rates and terms ... for loans for similar purposes and periods of times." 7 U.S.C. § 1922(a). *See Green v. United States,* 8 F.Supp.2d 983, 994 (W.D.Mich.1998) (finding Farm Service Agency acted in sovereign capacity

in lending money). It cannot be said that the Farm Service Agency acts in a proprietary capacity in lending money to farmers in financial distress. *See id.* (stating "government acts in a sovereign rather than a proprietary role 'by providing grants for the purpose of realizing particular social goals'").

■■■ "Equitable estoppel is a doctrine which precludes one party from asserting a claim or defense against another party who has detrimentally altered her position in reliance on the former's misrepresentation or failure to disclose a material fact." *Kennedy v. United States,* 965 F.2d 413, 417 (7th Cir.1992). The burden of proof is on the party claiming estoppel. *Id.* In general, equitable estoppel will not lie against the government. *See Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). In *Merrill,* a farmer applied for insurance under the Federal Crop Insurance Act to cover his wheat farming operations. An agent of the Federal Crop Insurance Corporation advised the farmer that his entire crop qualified for insurance and the farmer obtained insurance through the corporation. After the farmer's crop was lost, it was discovered that the agent's advice had been erroneous. The Supreme Court recognized the serious hardship caused by the agent's misinformation but rejected the argument that his representations estopped the government from denying insurance benefits, stating that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Id.* at 384, 68 S.Ct. 1. In this case, Farm Service Agency loan officials did not have the authority to bind defendant to a certain position by misstating the terms of the shared appreciation agreement.

The Court of Appeals for the Seventh Circuit has stated that a private party may "assert equitable estoppel against the government in a very narrow category of cases—when the traditional elements of estoppel are shown and there is affirmative misconduct on the part of the government." *Kennedy,* 965 F.2d at 417; *La-Bonte v. United States,* 233 F.3d 1049, 1050 (7th Cir.2000). Even if statements by loan officials could bind the government, plaintiffs have failed to demonstrate any affirmative misconduct on behalf of the government in misleading them as to the terms of the recapture provision. That Drewiske may have told plaintiffs that they would owe appreciation if they paid off the loan early does not demonstrate affirmative misconduct; rather, it is a correct but incomplete statement of the terms of the agreement. Corbett's letter of January 26 fails to demonstrate misconduct; rather, it was a response to a specific inquiry by plaintiff about their loan. Assuming loan officer Drewiske actually did assure plaintiffs that they were correct in their understanding that the government would not recapture any appreciation upon the expiration of the agreement, his misstatement fails to demonstrate affirmative misconduct. "Affirmative misconduct is 'more than mere negligence'" *LaBonte,* 233 F.3d at 1053 (internal citations omitted). At most, it appears that Drewiske misunderstood the terms of the agreement and conveyed his mistaken understanding to plaintiffs; plaintiffs do not argue that he tried to trick them or knew of his mistake. *See Green,* 8 F.Supp.2d at 994 (holding that statements by Farm Service Agency employees "were based on an erroneous application of [Farm Service Agency] regulations, and constitute no more than mere negligence. Such statements do not rise to the level of affirmative misconduct required for an estoppel claim against the government."). As a result, defendant

cannot be estopped from collecting $96,500 from plaintiffs for the appreciated value of their property between 1989 and 1999.

### ORDER

IT IS ORDERED that the decision of the Director of the National Appeals Division that plaintiffs Donald and Patsy Israel and Richard and Shirley Quinton owe $96,500 in shared appreciation pursuant to a shared appreciation agreement dated September 15, 1989 is AFFIRMED. Plaintiffs' complaint is DISMISSED.