Joseph E. PAULY, husband; Judy B. Pauly, wife, Plaintiffs–Appellants,

v.

U.S. DEPARTMENT OF AGRICULTURE; Ann M. Veneman, Secretary of the United States Department of Agriculture; National Appeals Division of The United States Department of Agriculture; Norman G. Cooper, Director of the National Appeals Division of the United States Department of Agriculture; Farm Service Agency, United States Department of Agriculture; James R. Little, Acting Administrator of the Farm Service Agency, United States Department of Agriculture, Defendants–Appellees.

Joseph E. Pauly, husband; Judy B. Pauly, wife, Plaintiffs–Appellees,

v.

U.S. Department Of Agriculture; Ann M. Veneman, Secretary of the United States Department of Agriculture; National Appeals Division of The United States Department of Agriculture; Norman G. Cooper, Director of the National Appeals Division of the United States Department of Agriculture; Farm Service Agency, United States Department of Agriculture; James R. Little, Acting Administrator of the Farm Service Agency, United States Department of Agriculture, Defendants–Appellants.

Nos. 02–35731, 02–35783.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Filed Nov. 13, 2003.

James D. Van Ness, Salem, OR, for the plaintiffs-appellants.

Robert D. McCallum, Jr., Office of the Attorney General, Washington, D.C., James A. McDevitt, United States Attorney, Spokane, WA, Michael Jay Singer, Eric D. Miller, Appellate Staff, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendants-appellees.

Before D.W. NELSON, KOZINSKI, and McKEOWN, Circuit Judges.

PER CURIAM.

Joseph and Judy Pauly are farmers who entered into a ten-year agreement with the United States Department of Agriculture (USDA) whereby the USDA agreed to restructure the Paulys' debt in exchange for a portion of the appreciation in the value of their farm during the term of the agreement. When the USDA sought to recapture a portion of the appreciation upon expiration of the agreement, the Paulys initiated this suit. The Paulys allege that the Government misled them by representing, through its agents, that no recapture would be due upon expiration of the agreement and that, therefore, the Government should now be estopped from recovering a portion of the appreciation. Alternatively, the Paulys argue that the Government or its agents are liable for tort damages arising from fraud in the inducement.

The district court affirmed the USDA's determination that appreciation was due under the agreement and granted in part the USDA's motion for summary judgment. However, the district court remanded to the USDA to reassess the amount of recapture under its current regulation, which excludes capital improvements from the calculation of appreciation. Both parties appealed.

We affirm in part and reverse in part. The district court was correct in enforcing the agreement according to its terms and in conformity with the statute governing the USDA's loan program. However, the district court erred in applying the USDA's regulations retroactively.

### FACTUAL AND PROCEDURAL BACKGROUND

During the early 1980s, a serious financial depression, combined with several natural disasters, led to widespread farm foreclosures in the United States. As a "lender of last resort," the Farmers Home Administration (FmHA), held a portfolio that was severely threatened by the declining net worth of U.S. farmers. By the mid–1980s, the vast majority of FmHA's outstanding farm debt was delinquent. In response, Congress passed the Agricultural Credit Act of 1987, Pub.L. No. 100–233, 101 Stat. 1568 (1988) (codified in scattered sections of 7 U.S.C.), which allowed farmers who were delinquent in payments to restructure their debts. In exchange for a write-down of their debt, the USDA could ask borrowers to sign a Shared Appreciation Agreement (SAA), which required borrowers to repay a portion of any appreciation that accrued on their farm during the term of the SAA.

Joseph and Judy Pauly are farmers who were delinquent in their loans from the USDA. In September 1989, the Paulys executed an SAA with the FmHA, which is now the Farm Service Agency (FSA). Under the terms of the SAA, the FmHA agreed to write off $131,754.89 of the Paulys' debt to the USDA. The SAA provides:

As a condition to, and in consideration of, FmHA writing down the above amounts and restructuring the loan, Borrower agrees to pay FmHA an amount according to one of the following payment schedules:

1. Seventy-five (75) percent of any positive appreciation in the market value of the property securing the loan ... between the date of this Agreement and either the expiration date of this Agreement or the date the Borrower pays the loan in full, ceases farming or transfers title of the security, if such event occurs four (4) years or less from the date of this Agreement.

2. Fifty (50) percent of any positive appreciation in the market value of the property securing the loan ... between the date of this Agreement and either the expiration date of this Agreement or

the date Borrower pays the loan in full, ceases farming or transfers title of the security, if such event occurs after four (4) years but before the expiration date of this Agreement.

The amount of recapture by FmHA will be based on the difference between the value of the security at the time of disposal or cessation by Borrower of farming and the value of the security at the time this Agreement is entered into.

The SAA was entered into pursuant to 7 U.S.C. § 2001. According to the statute:

Recapture shall take place at the end of the term of the [SAA], or sooner—

(A) on the conveyance of the real security property;

(B) on the repayment of the loans; or

(C) if the borrower ceases farming operations.

7 U.S.C. § 2001(e)(4) (2000). If recapture occurs within four years of restructuring, the agency may recover seventy-five percent of the appreciation; thereafter, it may recover only fifty percent. 7 U.S.C. § 2001(e)(3). Despite the express terms of the SAA and the governing statute, FmHA County Supervisor Kuhns allegedly told the Paulys, prior to the execution of the SAA, that no repayment would be due if they continued farming through the tenth and final year of the agreement and did not convey their property or repay their loans in the interim.

On September 11, 1996, the FSA sent the Paulys a letter notifying them that the SAA would expire on September 7, 1999. The letter acknowledged that there had been some confusion as to the need to pay recapture at the end of the expiration of the SAA, but confirmed that the Paulys would need to repay the lower of either (1) the amount by which their debt was written down or (2) fifty percent of the appreciation of their property. The FSA sent another letter to the Paulys on August 26, 1998, informing them that the FSA would appraise the property to determine whether appreciation had occurred.

The FSA's appraisal of the Paulys' farm included certain capital improvements that the Paulys made to their property after 1989, such as the addition of irrigation systems and the renovation of their primary residence. The appraiser determined that the farm had appreciated by $293,000 since the Paulys entered into the SAA. The FSA then determined that the full amount of the write-down was due since fifty percent of the appreciation exceeded the amount of the debt. On June 16, 1999, the FSA sent a "Notification of Shared Appreciation Due" to the Paulys, notifying them that they would owe $131,754.89 upon recapture.

The Paulys appealed the FSA's decision to the USDA's National Appeals Division (NAD). They argued that recapture was authorized under the SAA and 7 U.S.C. § 2001 *only* if the borrower conveyed the real property, repaid the loans, or ceased farming. The Paulys also argued that, even if recapture was authorized, the calculation of shared appreciation should not include capital improvements made after they entered into the SAA.

On October 26, 1999, the NAD officer determined that the FSA's decision to request a payment of $131,754.89 under the SAA was not erroneous. The NAD did not enter a specific conclusion regarding which regulation should be used to calculate appreciation, but did rely on the agency's appraisal in determining the amount owed by the Paulys. The Paulys then sought Director Review of the NAD decision. The Director upheld the decision of the NAD. The Paulys then filed their complaint in the United States District Court for the Eastern District of Washington.

The district court affirmed the agency's determination that appreciation was due under the SAA and granted in part the

government's motion for summary judgment. The court held that the USDA could recapture appreciation on the Paulys' farm under the terms of the SAA and the statute governing the transaction. The court also dismissed all tort claims against the government since sovereign immunity applied and the Federal Tort Claims Act (FTCA) prevented the Paulys from suing for negligent or fraudulent misrepresentation. However, the court remanded to the agency to recalculate the value of appreciation, excluding capital improvements, in accordance with its current regulations. Both parties appealed.

### STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. *League of Wilderness Defenders v. Forsgren*, 309 F.3d 1181, 1183 (9th Cir.2002). Pursuant to the Administrative Procedure Act (APA), agency decisions may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency's interpretation of its own regulations is entitled to deference unless it is plainly erroneous, inconsistent with the regulation, or based on an impermissible construction of the governing statute. *See Forsgren*, 309 F.3d at 1183.

### DISCUSSION

*I. Jurisdiction.*

■ The Government argues that we lack jurisdiction over the Paulys' appeal under the final judgment rule since the district court's judgment did not entirely dispose of this case. The district court's decision is clearly "not final in the strict sense of a decree that leaves nothing further to be addressed" by a court or administrative agency since the district court partially remanded to the USDA to recalculate the amount due under the SAA. *See Wabol v. Villacrusis*, 958 F.2d 1450, 1453

(9th Cir.) (amending 898 F.2d 1381 (9th Cir.1990)), *cert. denied,* 506 U.S. 1027, 113 S.Ct. 675, 121 L.Ed.2d 598 (1992) (quoting *American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 277, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980)). However, the Supreme Court has held that "the requirement of finality is to be given a practical rather than a technical construction." *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964) (internal quotations omitted).

Here, the district court's partial remand is extremely narrow and merely requires a mechanical recalculation of the recapture amount under current agency regulations. Such "ministerial" agency action should not preclude our review of the parties' underlying claims. *See Parks v. Pavkovic,* 753 F.2d 1397, 1401–02 (7th Cir.1985) (where all that remains before the district court is the completion of a ministerial task, such as the calculation of damages, the order appealed from is a final judgment under 28 U.S.C. § 1291). We have recognized that, although an unresolved damages calculation could later come before this Court, "this alone should not prevent our adjudication of important and potentially dispositive questions which have been fully briefed and argued." *Wabol,* 958 F.2d at 1455. Because postponing review of either party's appeal would not promote judicial economy, we treat the district court's opinion as "practically final" for jurisdiction purposes and consider both parties' appeals simultaneously. *See Id.* at 1454.

*II. The Shared Appreciation Agreement.*

■ The Paulys contend that the SAA is ambiguous and should therefore be construed against the drafter, the FSA. They urge this Court to reform the contract to comply with their "reasonable belief" that recapture was due only upon one of three

enumerated triggering events: sale of the property, cessation of farming, or payment of the loan in full. Even a sympathetic reading of the SAA does not support the Paulys' argument.

The SAA requires the Paulys to pay a percentage of any appreciation "between the date of this Agreement and *either* the expiration date of this Agreement *or* the date Borrower pays the loan in full, ceases farming or transfers title of the security . . . ." (emphasis added). This language is not ambiguous. The Paulys are obliged to pay a portion of the appreciation upon expiration of the SAA if no other triggering event has occurred prior to expiration.

Any ambiguity in the SAA is resolved by the statute authorizing the agreement. A plain reading of section 2001(e)(4) suggests that recapture at the end of the term of the SAA is not only permissible but is also, in fact, mandatory. *See* 7 U.S.C. § 2001(e)(4) ("Recapture *shall* take place at the end of the term of the agreement, or sooner . . . ." (emphasis added)). Both of the circuit courts to consider the matter have determined that the terms of the SAAs are unambiguous and require recapture at the end of the contract period. *See Stahl v. USDA,* 327 F.3d 697, 703 (8th Cir.2003); *Israel v. USDA,* 282 F.3d 521, 527–28 (7th Cir.2002). In both cases, the courts observed that this interpretation of the SAA was strongly supported by the language of the relevant statute. *See Stahl,* 327 F.3d at 702; *Israel,* 282 F.3d at 527. The reasoning in both these cases is persuasive and applies with equal force to the Paulys' claims.

*III. Equitable Estoppel.*

The Paulys further assert that even if the SAA unambiguously requires recapture, the principles of equitable estoppel or common-law contract doctrines, such as reformation and mutual mistake, dictate that the SAA cannot be enforced according

to its terms. Their common law claims are either derivative of the estoppel theory or rest on the erroneous assumption that the SAA is ambiguous. For the reasons stated above, the SAA is not ambiguous. Therefore, we will now address whether the government may be estopped from recapturing appreciation on the Paulys' farm due to misrepresentations by Kuhns, the government official with whom the Paulys negotiated the SAA.

 As a general matter, "the Government may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984). In the Ninth Circuit, a party seeking to estop the Government "must satisfy two requirements in addition to those ordinarily applicable." *S & M Inv. Co. v. Tahoe Reg'l Planning Agency,* 911 F.2d 324, 329 (9th Cir.1990). First, the plaintiff must show that the government has engaged in "affirmative misconduct going beyond mere negligence." *Id.* Second, the plaintiff must show that "the government's act will cause a serious injustice and the imposition of estoppel will not unduly harm the public interest." *Id.* The district court appropriately determined that neither requirement is satisfied here.

 The Paulys have not demonstrated affirmative government misconduct. They allege that they were misinformed about the terms of the SAA, but offer no evidence that the alleged misrepresentation was deliberate or fraudulent. They do not attempt to demonstrate that Kuhns was aware of the correct terms of SAA, let alone that he deliberately misled them. Rather, they point to the "FSA's nationwide conduct, by FmHA County Supervisors, District Directors and State Office personal [sic] advising FmHA borrowers—prior to executing the Shared Appreciation Agreement—that no recapture would be

due...." Despite the Paulys' conclusory statement that such conduct "clearly meets the heightened standard," they are unable to explain how widespread misinformation evinces knowledge of the actual terms of the SAA. On the contrary, it appears that many FSA officials themselves were under the mistaken impression that no shared appreciation would be due at the end of the ten-year term. At most, Kuhns's actions amount to negligence, which does not satisfy the "affirmative misconduct" requirement. *Cf. Israel v. USDA,* 135 F.Supp.2d 945, 953 (W.D.Wis.2001), *aff'd,* 282 F.3d 521 (7th Cir.2002) (holding that while any erroneous information about the terms of recapture under SAAs may have been given negligently, such misinformation did not constitute affirmative misconduct).

Estoppel is also unnecessary to prevent a serious injustice in this case. Under the terms of the SAA, the Paulys are only required to repay a debt that they had already incurred. As the district court found, "[a]t worst, the Paulys have received a ten-year interest-free loan." *Pauly v. USDA,* No. 01–5037, at 19 (E.D. Wash. June 14, 2002) (order granting in part motion for summary judgment). Inexplicably, the Paulys suggest that their injury for estoppel purposes was the "continued improvement of the real property and the corresponding increase in value." It is unclear—and highly counterintuitive—that such an *increase* in the value of their farm constitutes injury, especially when the amount of appreciation they paid merely equals the amount of their debt that the Government wrote off.

■ Finally, local FSA agents cannot bind the Government beyond the scope of the statute granting them authority. It is a well-established rule that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.... [T]his is so even though, as here, the agent himself may have been unaware of the limitations upon his authority." *Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947) (restricting claims against Federal Crop Insurance Program to those covered by statute and regulation, despite claimant's belief and agent's misrepresentation). The Supreme Court has explained that "those who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Heckler,* 467 U.S. at 63, 104 S.Ct. 2218.

Here, it was well within the Paulys' means to ascertain the explicit—and statutorily mandated terms—of the SAA. They had an opportunity to read the SAA, which, as discussed above, unambiguously requires repayment at the end of its term.

*IV. Tort Claims.*

The Paulys seek tort damages based on their allegations that Kuhns either fraudulently or negligently misrepresented the terms of the SAA. The district court found that, since Kuhns was acting within the scope of his employment, the United States should be substituted as a defendant in the case. The district court then dismissed the Paulys' tort claims, since plaintiffs are precluded from suing the United States under the FTCA. The Paulys appeal both the determination that Kuhns was acting within the scope of his employment and that the FTCA precludes a claim for fraud in the inducement.

■ Under the Federal Employees Liability Reform and Tort Compensation Act, known as the Westfall Act, a federal employee is immune from suit upon certification of the Attorney General that the employee was acting within the scope of his employment. *See* 28 U.S.C.

§ 2679(d)(1). Pursuant to 28 C.F.R. § 15.3, a United States Attorney certified that Kuhns was acting within the scope of his employment at the time of the incident giving rise to the suit. This certification is "prima facie evidence that a federal employee was acting in the scope of her employment at the time of the incident." *Billings v. United States*, 57 F.3d 797, 800 (9th Cir.1995). The plaintiff bears the burden of disproving the certification by a preponderance of the evidence. *Id.*

 State law governs the scope-of-employment inquiry under the Westfall Act. *See McLachlan v. Bell*, 261 F.3d 908, 911 (9th Cir.2001). Under Washington law, an employee acts within the scope of his employment, even if his acts are contrary to instructions or constitute intentional torts, when he is "engaged in the performance of the duties required of him by his contract of employment" or when "he [is] engaged at the time in the furtherance of the employer's interest." *Dickinson v. Edwards*, 105 Wash.2d 457, 716 P.2d 814, 819 (1986) (quoting *Elder v. Cisco Constr. Co.*, 52 Wash.2d 241, 324 P.2d 1082, 1085 (1958)) (emphasis omitted). Kuhns was fulfilling his job functions at the time he engaged in the allegedly tortious conduct. The Paulys do not dispute that Kuhns's job functions included explaining SAAs to farmers. Rather, they claim that Kuhns "stepped aside from the master's business in order to effect some purpose of his own." They do not specify what Kuhns's ulterior motive might be. Although they hint that County Supervisors were under "intense pressure" to process applications quickly, such vague speculation hardly satisfies their burden in overcoming the Attorney General's certification. Since Kuhns was acting within the scope of his employment when he negotiated with the Paulys, the district court properly substituted the United States as a defendant.

 The Paulys' exclusive remedy for their tort claims is an action against the United States under the FTCA, which waives the federal government's sovereign immunity for certain tort claims by persons injured by actions of a federal employee "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). However, the Paulys' tort claims are barred by 28 U.S.C. § 2680(h), which specifically excludes "[a]ny claim arising out of ... misrepresentation, deceit, or interference with contract rights" from liability under the FTCA. The Supreme Court has held that the retention of sovereign immunity under this provision covers both claims of negligent misrepresentation and claims of fraudulent misrepresentation. *See United States v. Neustadt*, 366 U.S. 696, 702, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). The fact that the Paulys label their tort claim "fraud in the inducement," rather than "misrepresentation, deceit, or interference with contract rights," is inapposite. To determine whether a claim is barred by section 2680(h), we "look[ ] beyond the labels used" by the plaintiff. *Thomas–Lazear v. FBI*, 851 F.2d 1202, 1207 (9th Cir.1988). Rather, we "examine whether the conduct upon which the claim is based constitutes one of the torts listed in § 2680(h)." *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir.1996).

"[T]he essence of an action for misrepresentation, whether negligent or intentional, is the communication of misinformation on which the recipient relies." *Block v. Neal*, 460 U.S. 289, 296, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). The Paulys' allegations against Kuhns fall squarely within this definition. The injuries they claim are entirely the result of allegedly inaccurate information provided by Kuhns, either by design (fraud) or by inadvertence (negligent misrepresentation). Therefore, their tort claims are barred by section

2680(h), and the district court properly dismissed them.

*V. Calculation of Recapture.*

The Paulys argue that the USDA impermissibly included capital improvements in calculating the appreciation on their farm. Apparently, it had been the USDA's practice in processing over 5,000 SAAs to include capital improvements in its appraisals for the purpose of calculating the amount of recapture due. *See* 65 Fed. Reg. 50,403 (2000). Nonetheless, on August 18, 2000, during the pendency of this appeal, the agency adopted a new regulation which excluded capital improvements from the appraisal at the end of the term of an SAA. *See* 7 C.F.R. § 1951.914(c)(1) (2000). The district court erred in compelling the USDA to apply its regulations retroactively, despite the agency's express decision against retroactive application.

The Supreme Court has observed that "[r]etroactivity is generally disfavored in the law." *Eastern Enters. v. Apfel,* 524 U.S. 498, 532, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998) (plurality opinion). In *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), the Court held that "administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. 468. The district court recognized *Bowen's* limitation on retroactivity, but nonetheless concluded that *Smiley v. Citibank,* 517 U.S. 735, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996), "effectively limited" *Bowen. Pauly v. USDA,* No. 01–5037, at 22.

The district court's reliance on *Smiley* was misplaced. In *Smiley,* the Supreme Court held that the Comptroller of the Currency's interpretation of the National Bank Act was entitled to deference, even though its interpretation was expressed in a regulation that had been adopted in response to ongoing litigation. In a footnote,

the Court acknowledged the argument that application of the regulation might have an impermissibly retroactive effect. *See Smiley,* 517 U.S. at 744 n. 3, 116 S.Ct. 1730. The Court disagreed, explaining,

> There might be substance to this point if the regulation replaced a prior agency interpretation—which, as we have discussed, it did not. Where, however, a court is addressing transactions that occurred at a time when there was no clear agency guidance, it would be absurd to ignore the agency's current authoritative pronouncement of what the statute means.

*Id.* The Court in *Smiley* emphasized that the Comptroller's regulation did not displace any prior agency interpretation. *Smiley* does not apply to a situation, such as the one here, where an agency's new regulation represents an explicit break with prior practice.

*Smiley* also says nothing about whether a rule may be applied retroactively when the agency has expressly decided against retroactive application. Under the district court's approach, it would be impossible for an agency to promulgate a rule that was *not* retroactive, unless it expressly contradicted a prior rule. This turns *Bowen* on its head by creating a presumption in favor of retroactivity. No other court has read into the *Smiley* footnote such extraordinary precedent and we refuse to do so today.

*CONCLUSION*

The SAA requires the Paulys to pay a portion of the appreciation on their property upon expiration of the SAA. We join the Seventh and Eighth Circuits in holding that the statute governing the USDA loan program is unambiguous, and mandates recapture upon expiration of the SAA.

The Paulys also fail to satisfy the heightened standard required by the

Ninth Circuit to estop the Government from enforcing the SAA. Since Kuhns was acting within the scope of his employment when he allegedly misrepresented the terms of the SAA, the district court appropriately found any action based on his misrepresentations barred under the FTCA.

The district court erred in retroactively applying the USDA's current regulations governing the calculation of recapture. The presumption against retroactivity is not overcome by *Smiley* where the agency has previously interpreted its own regulations and explicitly declines to apply a new regulation retroactively.

**AFFIRMED** in part and **REVERSED** in part.